[No. A049524. First Dist., Div. Three. Mar. 22, 1991.]

In re NATHANIEL C., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
NATHANIEL C., Defendant and Appellant.

994

## COUNSEL

Paula W. Schlichter and Renee L. Berenson, under appointments by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Stan M. Helfman and Violet M. Lee, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

CHIN, J.—Appellant challenges the sufficiency of the evidence to sustain the findings in his juvenile court proceeding. The court found appellant conspired to violate Penal Code sections 240 (assault), 245 (assault with a deadly weapon), and 415, subdivision (1) (fighting and challenging to fight).[1] The overt act alleged and found was that appellant entered a van with members of a gang and traveled to a park to fight a rival gang.[2] The court also found the evidence supported a sentence enhancement allegation under section 186.22, subdivision (b), part of the California Street Terrorism Enforcement and Protection Act, section 186.20 et seq., enacted to deal with criminal street gang activity.[3] Appellant was adjudged a ward of the court but was allowed to remain in his parents' home under a probation officer's supervision. No enhancement was imposed under section 186.22, subdivision (b).

We find that substantial evidence supports the conspiracy and overt act findings. However, the evidence failed to establish all of the elements

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] The court dismissed for insufficient evidence the charge that appellant assaulted three members of the rival gang, and two other overt act allegations: exiting the van at the park, and chasing the rival gang members in order to fight with them.

[3] Section 186.20 et seq. was part of Statutes of 1988, chapter 1256, No. 11 West's California Legislative Service, pages 3181-3187, No. 5 Deering's Advance Legislative Service, pages 4716-4723, an urgency measure which took effect upon enactment on September 23, 1988.

required by section 186.22, the criminal street gang enhancement. There-
fore, the finding on the enhancement is reversed, and the judgment is
affirmed in all other respects.

## I. THE FACTS

Appellant asserts there was insufficient evidence to support the findings.
■ Therefore, we have reviewed the whole record in the light most favor-
able to the judgment, and presume every fact reasonably deducible from the
evidence in support of the judgment. (*People* v. *Johnson* (1980) 26 Cal.3d
557, 576 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].) The
conclusions of a trier of fact are upheld if supported by substantial evidence,
evidence that is reasonable, credible, and of solid value. (*Id.*, at pp. 576,
578.) Circumstantial evidence can, of course, constitute substantial evi-
dence. (*In re Andre R.* (1984) 158 Cal.App.3d 336, 343 [204 Cal.Rptr.
723].)

### A. *The Facts Relating to the Conspiracy Charge*

On the evening of October 12, 1989, a group of juveniles traveled by van
to a dance at South San Francisco High School. The group included mem-
bers of a gang known as the "Tongan Family," or just the "Family" (Fami-
ly). On the way to the dance, there was talk in the van about finding
members of a rival gang, known as the "B-Wingers" or "South City Boyz
[*sic*]" (B-Wingers), and whether they would be at the dance. There also was
a lot of talk that if the B-Wingers got caught, there was going to be a fight.
As one admitted Family member testified: "Everybody knew what was
going on and stuff." They wanted to fight that night because they believed
B-Wingers had recently stabbed a Family member. The gang member who
had been stabbed also was in the van. Before the group went to the dance,
two baseball bats and a stairway handrail segment three and one-half feet
long were put in the van.

No B-Wingers were found at the dance or at the school. But the group,
which had grown to 18 people, heard that B-Wingers were at Cypress Park.
Appellant joined the assembled group, which decided to go to the park.
Eleven people, including appellant, got in the van, and six more got in an
accompanying car to go find the B-Wingers at the park. In the van, the
stabbing incident was recounted, and there again was talk about fighting
and beating up the B-Wingers to get even for the stabbing. Appellant rode
in the van to the park. The group in the van included at least two Family
members, and at least one Family member was in the car.

Before leaving for the park, the group concocted a plan to attack any B-
Wingers found there. The plan was also reviewed en route. The van

dropped off three groups, one at each end of the park and one in the middle. The group in the car proceeded to the other side of the park from the van. This deployment was intended to catch any B-Wingers who tried to escape.

The second and third groups from the van saw B-Wingers and chased them. One group from the van was dropped off about thirty feet away from several B-Wingers. Two members of this group were armed with the baseball bats from the van, and a member of the Family was armed with the handrail piece. They got out of the van to beat up the B-Wingers they saw, and the Family member would have used the handrail to do it if he had caught them. They chased the B-Wingers until one of the B-Wingers turned and pointed what looked like a gun at them, which prompted a retreat.

After the last chase, the various groups got back into the van, including one Family member who went to the park in the car. An officer summoned to the scene by a report of gang violence stopped the van nearby. Appellant was arrested along with the other van occupants.

Appellant did not testify at the hearing on the petition, and no witness attributed any incriminating statements to him. The court stated the evidence did not prove appellant got out of the van at the park to fight, or that he chased and attempted to fight the B-Wingers.[4]

B. *The Facts Relating to the Criminal Street Gang Enhancement*

To establish the elements of the enhancement charge, the prosecution relied primarily on the testimony of an expert witness, a South San Francisco police officer responsible for maintaining gang activity intelligence reports.[5] Other evidence regarding the enhancement charge came from juvenile witnesses concerning the Family and the October 12 incident.

One admitted member of the Family testified that the gang resorted to violence when it chose, committed crimes if pushed, and ". . . turned into a real big gang" if there was a fight. Another witness, whose brother was in the gang, testified that when a gang member was hurt, "they go down and hurts [*sic*] the person that hurts them." This would-be gang member also said a roll of gang members was written on a friend's wall.

---

[4]One juvenile witness initially testified that appellant got out of the van at the park with one of the first two groups. Later, on cross-examination, the juvenile expressed some confusion, recanted his testimony, and said appellant did not get out of the van.

[5]Over a two-year period, the officer reviewed reports and collected intelligence on gang activities. He spent half of his time on such matters and attended conferences and monthly regional meetings concerning gangs. The court found the officer qualified to testify as an expert in gang recognition and gang practices in South San Francisco.

The officer stated the primary activity of all gangs in his area was criminal, including assaults and batteries, weapons possession offenses, assaults with deadly weapons, resisting or obstructing police, and fighting. However, the Family was based in San Bruno rather than South San Francisco.

In the officer's opinion, the Family was an active gang having more than three members. The officer believed that four or five boys attending South San Francisco High School were or had been members. There was no particular color or clothing that identified a Family member, though there were some graffiti that signified the gang. Members of the B-Wingers told him they disliked the Family because they had been "jumped" by Family members at a shopping center in San Bruno.

The officer testified that since January 1, 1988, the Family was responsible for an assault with a deadly weapon case, and that another such offense was committed by the Family during the two years he had handled gang intelligence. The officer did not know of any convictions for these offenses, and his information about them was obtained from police reports.

One of the assaults the officer attributed to the Family was the October 12 incident in Cypress Park. The officer learned about the other assault from talking with San Bruno police officers. There was more than one suspect in this latter assault, which occurred after the October 12 events. The incident involved the shooting of a person the San Bruno police believed to be a member of the Family, according to the officer. The officer said the San Bruno police believed the person that did the shooting also was a Family member, and that the shooting was gang-related.

## II. DISCUSSION

### A. *The Conspiracy*

A criminal conspiracy exists when two or more persons agree to commit a crime and do some overt act in furtherance of the agreement. (§§ 182, 184; *People* v. *Cockrell* (1965) 63 Cal.2d 659, 667 [47 Cal.Rptr. 788, 408 P.2d 116].) ▮▮▮ Appellant asserts there was no substantial evidence that he was a party to such an agreement. Appellant argues that the conspiratorial agreement to fight the B-Wingers and the planning for the assault occurred before he got in the van. Appellant claims there is no evidence of such discussions in his presence, or that he had any interest or participation in committing the offenses. However, to buttress his position, appellant presents a selective view of the evidence and disregards the reasonable inferences supporting the judgment.

We are not free to follow appellant's carefully winnowed approach to the evidence. ■ We must review the entire record in the light most favorable to the judgment. Whether the evidence is direct or circumstantial, our inquiry is to determine if any reasonable trier of fact could have found appellant guilty beyond a reasonable doubt. (*People* v. *Towler* (1982) 31 Cal.3d 105, 118-119 [181 Cal.Rptr. 391, 641 P.2d 1253].) An appellate court's belief that the circumstantial evidence can reasonably be reconciled with innocence does not warrant interference with the determination of the trier of fact. (*Id.*, at p. 118.) Under these rules, we believe that the evidence is contrary to the view espoused by appellant.

■ Circumstantial evidence often is the only means to prove conspiracy. (*People* v. *Osslo* (1958) 50 Cal.2d 75, 94 [323 P.2d 397]; *People* v. *Kobey* (1951) 105 Cal.App.2d 548, 562 [234 P.2d 251].) There is no need to show that the parties met and expressly agreed to commit a crime in order to prove a conspiracy. The evidence is sufficient if it supports an inference that the parties positively or tacitly came to a mutual understanding to commit a crime. (*People* v. *Cooks* (1983) 141 Cal.App.3d 224, 311 [190 Cal.Rptr. 211].) The inference can arise from the actions of the parties, as they bear on the common design, before, during, and after the alleged conspiracy. (*People* v. *Manson* (1976) 61 Cal.App.3d 102, 126 [132 Cal.Rptr. 265].) While mere association with perpetrators of crime does not establish participation in a conspiracy, it does provide a starting point. (*Ibid.*) As one court has noted, the maxim that "'One's actions speak louder than words' is peculiarly applicable to proof in conspiracy cases." (*People* v. *McManus* (1960) 180 Cal.App.2d 19, 37 [4 Cal.Rptr. 642].)

■ Here the evidence shows much more than "mere association" of appellant with the conspirators. The members of the Family and their supporters quite clearly formed a plan to hunt down and assault B-Wingers to retaliate for the stabbing of a Family member. Before the van arrived at the school dance, the plan was devised and weapons for the fight were put in the van. At the school, the conspiracy expanded with the addition of more participants, including appellant. Appellant was with the group assembled outside the van when the B-Wingers' presence at the park was reported. Before leaving for the park in the van and the car, the conspirators refined their plans by devising a strategy for attacking any B-Wingers found there. Appellant was among those who went in the van to the park where the previously agreed plans were carried out, albeit without inflicting the intended physical injuries.

Although mere association does not prove conspiracy, a much different situation arises where the conspiracy already exists and overt acts are being committed to accomplish its illegal purpose. (*People* v. *Moran* (1958) 166

Cal.App.2d 410, 415 [333 P.2d 243].) When a conspiracy has formed, and a stranger to the conspiracy then associates himself with the conspirators, and with knowledge of the conspiracy joins the others in committing overt acts in furtherance of the unlawful purpose, then he is guilty as a member of the conspiracy. (*Ibid.*) Contrary to appellant's assertion, the evidence shows the objective of the conspiracy was discussed when appellant was present, and not only before he joined those gathered at the van. It is undisputed that appellant got into the van with the others and went to the park. That overt act by appellant, together with the circumstantial evidence of appellant's awareness of the plan to attack the B-Wingers and his association with the conspirators, was sufficient to support the court's conspiracy finding.

## B. *The Criminal Street Gang Enhancement*

The Legislature was explicit in stating its intent in creating the California Street Terrorism Enforcement and Prevention Act, section 186.20 et seq., ". . . to seek the eradication of criminal activity by street gangs by focusing upon patterns of criminal gang activity and upon the organized nature of street gangs, which together, are the chief source of terror created by street gangs." (§ 186.21.) In section 186.22, subdivision (b), the Legislature approved additional punishments for any person "convicted of a felony which is committed for the benefit of, at the direction of, or in association with any *criminal street gang*, with the specific intent to promote, further, or assist in any criminal conduct by gang members . . . ." (§ 186.22, subd. (b)(1), italics added.)

"[C]riminal street gang" is the linchpin for the act's provisions. The phrase is defined specifically, and its application requires proof of multiple elements. A criminal street gang is defined as "[1] any ongoing organization, association, or group of three or more persons, whether formal or informal, [2] having as one of its primary activities the commission of one or more [of eight specified crimes[6] ], [3] which has a common name or common identifying sign or symbol, [4] whose members individually or collectively engage in or have engaged in a *pattern of criminal gang activity*." (§ 186.22, subd. (f), italics added.)

A "pattern of criminal gang activity" is defined as "the commission, attempted commission, or solicitation of two or more of the [eight specified

---

[6]The eight crimes are specified in section 186.22, subdivision (e)(1) through (8): assault with a deadly weapon or by means of force likely to produce great bodily injury; robbery; unlawful homicide or manslaughter; sale, possession for sale, transportation, manufacture, offer for sale, or offer to manufacture controlled substances; shooting at an inhabited dwelling or occupied motor vehicle; arson; intimidation of witnesses or victims; and grand theft of any vehicle, trailer, or vessel.

crimes], provided at least one of those offenses occurred after [September 23, 1988] and the last of those offenses occurred within three years after a prior offense, and the offenses are committed on separate occasions, or by two or more persons . . . ." (§ 186.22, subd. (e).) In this case, the only one of the eight specified crimes addressed by the evidence was assault with a deadly weapon.

Two of the elements of a "criminal street gang" present no problems of proof on this appeal. ■ There was sufficient evidence that the Family met the first criterion of being an "ongoing organization, association, or group of three or more persons, whether formal or informal . . . ." (§ 186.22, subd. (f).) Two of the juvenile witnesses identified at least three participants in the October 12 incident as members of the Family. There was testimony that the gang had a membership roll written on a wall. The evidence also showed that the members, friends, and supporters of the Family were capable of concerted actions such as the attempted retaliation against the B-Wingers. Thus, the evidence established that the Family had the existing organizational and size characteristics required by the statute.

■ There also was sufficient evidence that the gang "has a common name or common identifying sign or symbol . . . ." (§ 186.22, subd. (f).) The gang and its members were known by two names, the "Tongan Family" and just the "Family." The association of multiple names with a gang satisfies the statute's requirement so long as at least one name is common to the gang's members. Similarly, the gang practices expert testified there were graffiti which signified the gang, though no particular color or clothing was associated with gang membership. As anyone familiar with the modern urban environment is aware, graffiti function as symbols as well as a visual blight. Thus, both alternatives for satisfying this element were proved.

■ ■ ■ ■ ■ Appellant's attack on the criminal street gang enhancement finding focuses on the pattern of criminal gang activity requirement.[7] In particular, appellant raises several arguments concerning the proof of the two predicate offenses required to establish a pattern.

---

[7] Appellant also argues that we should construe section 186.22, subdivision (b)(1), as creating a substantive offense rather than an enhancement. However, appellant does not indicate how such a construction would affect his appeal. Respondent does not argue there is no need to plead and prove the enhancement, and the enhancement was pleaded as a special allegation in the petition. As a matter of due process, pleading the enhancement and proof of each fact required by section 186.22, subdivision (b), are necessary, particularly in view of the specific intent required for the enhancement. (*People* v. *Hernandez* (1988) 46 Cal.3d 194, 208 [249 Cal.Rptr. 850, 757 P.2d 1013]; *People* v. *Jackson* (1985) 37 Cal.3d 826, 835, fn. 12 [210 Cal.Rptr. 623, 694 P.2d 736]; *People* v. *Najera* (1972) 8 Cal.3d 504, 509-510 [105 Cal.Rptr. 345, 503 P.2d 1353].) Because no sentence enhancement was imposed, we find no reason to decide the enhancement/substantive offense question suggested by appellant.

Appellant argues the statute must be read as requiring proof of two different predicate offenses, not just two instances of the same offense, and as requiring proof that the offenses were committed by two or more persons. He also argues there was no showing of an offense committed after September 23, 1988, or two offenses committed within three years of each other. Appellant further asserts there was a failure to prove two predicate offenses, in that only nonspecific hearsay was offered to prove any assault by a Family member other than the October 12 incident.

Appellant's argument that the evidence failed to show the time the predicate offenses occurred misapprehends the record. The record shows that one of the offenses was the incident on October 12, 1989. The expert witness testified that the second assault with a deadly weapon attributed to the Family occurred a "few months" before the March 1990 hearing. Thus, at least one of the asserted predicate offenses occurred after the September 23, 1988, effective date of the statute. The other claimed predicate offense apparently occurred within three years of the first, leaving aside for the moment the question of the competency of the testimony on this assault.

In assessing appellant's statutory interpretation arguments, we apply the familiar rules. ■ Where statutory interpretation is required, the fundamental rule is to " 'ascertain the intent of the Legislature so as to effectuate the purpose of the law.' [Citations.]" (*People* v. *Aston* (1985) 39 Cal.3d 481, 489 [216 Cal.Rptr. 771, 703 P.2d 111].) In determining intent, the court looks first to the words themselves. (*People* v. *Woodhead* (1987) 43 Cal.3d 1002, 1007 [239 Cal.Rptr. 656, 741 P.2d 154].) "When the language is clear and unambiguous, there is no need for construction. [Citations.]" (*Id.*, at pp. 1007-1008.) The court will decline to follow the plain meaning of a statute only when to do so would inevitably frustrate the manifest purpose of the legislation as a whole or lead to absurd results. (*People* v. *Belleci* (1979) 24 Cal.3d 879, 884 [157 Cal.Rptr. 503, 598 P.2d 473].) ■ In the case of a penal statute, it is the policy of this state to construe the statute as favorably to the defendant as its language and the circumstances of its application permit. (*Keeler* v. *Superior Court* (1970) 2 Cal.3d 619, 631 [87 Cal.Rptr. 481, 470 P.2d 617, 40 A.L.R.3d 420].) Here, the legislative intent is clearly and expressly stated.

■ We cannot accept appellant's reading of the statute as requiring proof of two different offenses to the exclusion of proof of two instances of the same offense. The language of the statute does not require this interpretation, although there is a measure of ambiguity. But under appellant's interpretation, a gang which limited its criminal activities to assaults with deadly weapons would not be subject to the statute no matter how many times its members committed that crime. Such an interpretation of the

phrase, "two or more of the following offenses," runs counter to the act's intent to reach organized criminal activity and violence.

So too the statute does not require that each predicate offense be committed by two or more persons. To constitute a "pattern," the statute requires only that the offenses be "committed on separate occasions, *or* by two or more persons . . . ." (§ 186.22, subd. (e), italics added.) The use of the disjunctive in defining "pattern of criminal gang activity" means a pattern can be established by two or more incidents, each with a single perpetrator, or by a single incident with multiple participants committing one or more of the specified offenses. For example, the October 12 incident in Cypress Park had the potential for constituting a "pattern of criminal gang activity." However, the evidence failed to show that more than one member of the Family actually engaged in the "commission, attempted commission, or solicitation" of an assault with a deadly weapon. Therefore, that incident alone cannot establish the pattern as defined and required by the statute. The criminal street gang enhancement finding thus depends on the sufficiency of the evidence of assaults committed on separate occasions.

The evidence on the October 12 incident provided ample proof of the commission or attempted commission of an assault with a deadly weapon by a member of the Family. The evidence showed that one admitted member of the Family was armed with the segment of stairway handrail. That individual got out of the van approximately thirty feet away from several B-Wingers and gave chase while still armed with the length of handrail. The gang member admitted that if he had caught the B-Winger he was chasing, "I guess he would have just got beat." This evidence is sufficient to establish an assault with a deadly weapon by the gang member. (§§ 240, 245; see 1 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) Crimes Against the Person, §§ 401, 414, 417-418, pp. 464-465, 474-475, 478-480.)

The evidence offered to establish the second predicate offense, however, is plainly insufficient. The only testimony presented to prove this part of the "pattern of criminal gang activity" was by the expert witness on gang practices. The witness offered only nonspecific hearsay of a suspected shooting of one Family member by another. The witness, a South San Francisco police officer, had no personal knowledge of the incident and only repeated what San Bruno police told him they believed about the shooting. Such vague, secondhand testimony cannot constitute substantial evidence that the required predicate offense by a gang member occurred. (*In re Leland D.* (1990) 223 Cal.App.3d 251, 258-259 [272 Cal.Rptr. 709].) ▮ While experts may offer opinions and the reasons for their opinions, they may not under the guise of reasons bring before the trier of fact incompetent hearsay evidence. (*Continental Airlines, Inc.* v. *McDonnell Douglas Corp.* (1989) 216

Cal.App.3d 388, 414-415 [264 Cal.Rptr. 779]; *Grimshaw* v. *Ford Motor Co.* (1981) 119 Cal.App.3d 757, 788-789 [174 Cal.Rptr. 348].)

 It is incumbent upon the prosecution in seeking an enhancement under section 186.22, subdivision (b), to prove through competent evidence the elements of a "criminal street gang" as set out in the statute, including the offenses necessary to satisfy the pattern requirement. In this case, the prosecutor did not meet that burden.

 However, appellant is mistaken in suggesting that *In re Lincoln J.* (1990) 223 Cal.App.3d 322, 330 [272 Cal.Rptr. 852], requires that the pattern be shown by instances of "purposeful gang activity." No such requirement appears in the statute. Nor can that decision fairly be read as engrafting such a requirement onto the statute. All that is required is proof that members of the gang "individually or collectively engage in or have engaged in a pattern of criminal gang activity" as defined in the statute. (§ 186.22, subds. (e) and (f).) Here, if there had been competent proof that one member of the Family shot another, that would have sufficed to show the second predicate offense for a pattern of criminal gang activity. Intra-gang violence threatens public order and safety much the same as criminal conduct directed specifically against persons outside the gang. The statute does not exempt from its scope those predicate offenses committed by gang members as part of internal gang disputes or power struggles.

 Our review of the record disclosed a second infirmity in the proof of the criminal street gang elements. Even viewed in a light most favorable to the judgment, the evidence is insufficient to show that a primary activity of the Family is commission of one or more of the eight specified offenses, as required by section 186.22, subdivision (f).[8] This is not to say that the evidence failed to show that criminal conduct is a primary activity of the Family. But the statute's focus is much narrower than general criminal conduct; evidence must establish that a primary activity of the gang is one or more of the listed offenses.

The only testimony even remotely addressing this element is the expert's statement that the primary activity of all of the gangs in his area is criminal. The expert then gave a general list of the crimes he had in mind, only one of which—assault with a deadly weapon—is included among the eight offenses specified in the statute. The expert did not identify the Family as one of the gangs in his area. Indeed, the expert made a point of stating that the Family's base is in San Bruno rather than his jurisdiction, South San

---

[8] Pursuant to Government Code section 68081, we asked the parties to submit supplemental briefing on this issue.

Francisco. While we consider this element to be a proper subject of expert opinion, here the opinion did not relate specifically to the Family and its activities. Thus, the evidence failed to establish that a primary activity of the Family is commission of one or more of the offenses specified by the statute.

The record does not contain substantial evidence to support two of the essential elements of a criminal street gang as required by section 186.22, subdivisions (e) and (f). Consequently, the evidence does not establish that the felony committed by appellant, conspiracy, was "committed for the benefit of, at the direction of, or in association with any criminal street gang . . . ." (§ 186.22, subd. (b)(1).) The finding on the criminal street gang enhancement must be reversed.

## III. DISPOSITION

The finding on the criminal street gang enhancement under section 186.22, subdivision (b), is reversed. The judgment is affirmed in all other respects. The cause is remanded to the trial court with instructions to dismiss the petition's special allegation of a violation of section 186.22, subdivision (b).

Merrill, Acting P. J., and Strankman, J., concurred.