[No. A077291. First Dist., Div. Four. Dec. 23, 1998.]

THE PEOPLE, Plaintiff and Respondent, v.
THOMAS GALVAN, JR., et al., Defendants and Appellants.

**[Opinion certified for partial publication.*]**

*Parts III and IV of this opinion are not certified for publication. (See Cal. Rules of Court, rules 976(b) and 976.1.)

**COUNSEL**

Mary G. Swift, under appointment by the Court of Appeal, for Defendant and Appellant Thomas Galvan, Jr.

Robert Fiedler, under appointment by the Court of Appeal, for Defendant and Appellant Jose Juan Madrid.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General,

Catherine A. Rivlin and Christina V. Kuo, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**REARDON, J.**—A jury convicted appellants Thomas Galvan, Jr., and Jose Juan Madrid of felony assault and second degree robbery. Enhancements alleging the infliction of great bodily injury, inflicting of great bodily injury causing coma or paralysis and criminal street gang activity were also found to be true. (See Pen. Code,[1] §§ 186.22, subd. (b)(1), 211, 245, subd. (a)(1), 12022.7, subds. (a), (b).) Galvan was committed to state prison for 10 years and ordered housed at the California Youth Authority (CYA) (Welf. & Inst. Code, § 707.2); Madrid received a 12-year term in state prison. Madrid appeals, contending that (1) evidence of the charged offenses was improperly used to prove a gang enhancement; and (2) the ban on multiple punishment precludes imposition of consecutive gang and great bodily injury enhancements. Galvan also appeals, contending that (3) his sentence must be remanded to the trial court for an order directing a fitness evaluation by the CYA. Both (4) challenge the sufficiency of evidence to support the gang enhancement and (5) contend that the jury instructions on the gang enhancement were incorrect. We affirm both convictions, including the sentences.

### I. FACTS

On the night of May 2, 1996, 16-year-old Dylan Katz was walking his dog. Appellants Thomas Galvan, Jr., and Jose Juan Madrid—age 15 and 17, respectively—pulled up next to him, got out of their car and asked "What color do you bang?" When Katz replied, "Nothing," they said, "Wrong answer," and, led by Madrid, the two young men brutally attacked Katz and injured his dog. Katz lapsed into a coma for 10 weeks and woke up later in the hospital. He was beaten about the head and shoulder; the damage to his face was so severe that his eyelids were swollen shut. He suffered brain damage and was temporarily brain dead. By the time of trial, he was still unable to walk. He identified Galvan and Madrid—persons who were known to him before the attack and whom he identified in court—as his attackers.

Galvan and Madrid were charged by information with attempted murder and robbery. (See §§ 187, subd. (a), 211, 664.) The information also alleged sentence enhancements for gang activity and for infliction of great bodily injury resulting in coma and paralysis. (See §§ 186.22, subd. (b)(1), 12022.7, subds. (a), (b).) At trial, a law enforcement officer who was an expert on

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

local gangs testified that West Side Windsor was a gang of at least 20 members and that Galvan and Madrid were both members of this gang. The officer also opined that the current offenses of attempted murder, assault and robbery alone constituted evidence of the primary activities of the gang. Other evidence of gang involvement by Galvan and Madrid was shown, as well as evidence that the gang had formed before the Katz attack.

Galvan and Madrid moved for an acquittal on all charges and enhancements, but the trial court denied their motion. (See § 1118.1.) Madrid's renewed motion for acquittal was also denied. The parties stipulated that Katz suffered great bodily injury causing coma. Ultimately, the jury acquitted them of attempted murder, but convicted each of the lesser included offense of assault with a deadly weapon or by means of force likely to produce great bodily injury. Both were also convicted of second degree robbery and the jury found the enhancement allegations all to be true. (See §§ 186.22, subd. (b)(1), 187, subd. (a), 211, 245, subd. (a)(1), 664, 12022.7, subds. (a), (b).) Galvan was committed to state prison for ten years—a midterm of three years for robbery, a five-year enhancement for infliction of great bodily injury resulting in coma or paralysis, and a two-year enhancement for gang activity. Sentence on the assault conviction and the four remaining enhancements were stayed. He was ordered to be housed at CYA. Madrid was sentenced to twelve years in state prison—an upper term of five years for robbery, a five-year enhancement for infliction of great bodily injury resulting in coma or paralysis, and a two-year enhancement for gang activity. Again, sentence on the assault conviction and the four remaining enhancements were stayed. (See former § 654, as amended by Stats. 1976, ch. 1139, § 264, p. 5137; former § 1170.1, subd. (e), as amended by Stats. 1994, ch. 1188, § 12.7.)

## II. Gang Enhancement

### A. *Proof Based on Charged Offenses*

#### 1. *Facts*

On appeal, Galvan and Madrid raise a variety of challenges to the gang activity enhancements found to be true. They first contend that evidence of the charged offenses was improperly used to prove gang enhancement. They argue that the trial court improperly allowed the jury to consider evidence of current charged offenses when determining whether the West Side Windsor gang had as one of its primary activities the commission of one of the offenses enumerated in subdivision (e) of section 186.22. At trial, Galvan and Madrid argued that the prosecution could not use evidence of the current

offenses to establish the primary activities element of the gang enhancement. The trial court disagreed, allowing the prosecution to rely on evidence of the current offenses to prove this enhancement element. A law enforcement expert testified that West Side Windsor was a gang and offered evidence that Galvan and Madrid were both members of the gang. He also opined—over defense objection—that the gang had attempted murder, assault and robbery as its primary activities, based solely on the then pending charges. Galvan and Madrid moved for an acquittal on the gang enhancement at the close of the prosecution's case, but the motion was denied. During closing argument, the prosecutor noted the officer's testimony about primary activities. Galvan and Madrid argued that the jury should not find a primary activity based only on the current offenses and should instead reject the officer's expert testimony to the contrary. The jury was instructed that it was not bound to accept an expert opinion, but could give that testimony whatever weight it chose or to disregard it completely. It was also instructed that in order to be a criminal street gang, the group had to have as one of its primary activities the commission of murder, robbery, assault with a deadly weapon, or assault by means of force likely to produce great bodily injury.

### 2. *"Primary Activities"*

The sentence of "any person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members" must be enhanced by one, two or three years. (§ 186.22, subd. (b)(1); see *In re Elodio O.* (1997) 56 Cal.App.4th 1175, 1179 [66 Cal.Rptr.2d 95].) The Legislature defined the term "criminal street gang" as "any ongoing organization, association, or group of three or more persons, whether formal or informal, *having as one of its primary activities the commission of one or more of the criminal acts enumerated in [subdivision (e)]*, having a common name or common identifying sign or symbol, and whose members individually or collectively engage in or have engaged in a pattern of criminal gang activity." (§ 186.22, subd. (f), italics added; see *People* v. *Loeun* (1997) 17 Cal.4th 1, 4, 8 [69 Cal.Rptr.2d 776, 947 P.2d 1313]; *In re Nathaniel C.* (1991) 228 Cal.App.3d 990, 1000 [279 Cal.Rptr. 236].) In 1996, at the time of the commission of this offense, the Legislature defined the term "pattern of criminal gang activity" as "the commission, attempted commission, or solicitation of two or more [enumerated] offenses, provided at least one of those offenses occurred after the effective date of this chapter and the last of those offenses occurred within three years after a prior offense, and the offenses are committed on separate occasions, or by two or more persons . . . ." (Former § 186.22, subd. (e), as amended by Stats. 1995, ch. 377, § 2.) Among the enumerated offenses are attempted

murder, robbery and assault with a deadly weapon or by means of force likely to produce great bodily injury. (Former § 186.22, subd. (e)(1)-(3).)

The California Supreme Court has twice been called upon to determine the evidence necessary to establish the elements of a gang enhancement. In each case, it examined the specific language of section 186.22 to determine the questions presented. (See *People* v. *Loeun, supra,* 17 Cal.4th at pp. 8-9; *People* v. *Gardeley* (1996) 14 Cal.4th 605, 620-622 [59 Cal.Rptr.2d 356, 927 P.2d 713].) ██ When interpreting statutes, our role is limited to ascertaining the Legislature's intent in order to further the purpose of the law. To do so, we first look to the words of the statute themselves. If they are clear and unambiguous, the Legislature is presumed to have meant what it said. The plain meaning of the language governs and no statutory construction is needed. We follow the Legislature's intent and the plain words of its statutes regardless of what we may think of the wisdom, expediency or policy of the enactment. We must construe words in context and harmonize statutes—both internally and with each other—to the extent possible. We will decline to follow the plain meaning of the statute only if to do so would frustrate its purpose or lead to an absurd result. ██ When analyzing a penal statute that is capable of two constructions, we construe the statute as favorably to the defendant as its language and the circumstances of its application allow. (*People* v. *Loeun, supra,* at pp. 8-9; *People* v. *Gardeley, supra,* at pp. 621-622; *In re Nathaniel C., supra,* 228 Cal.App.3d at p. 1002.)

██ Subdivision (f) of section 186.22 defines a criminal street gang as an ongoing group "having as one of its primary activities the commission of one or more [enumerated] criminal acts . . . ." The clause is expressed in the present tense—that is, that at the time of the commission of the charged offenses, the group was engaged in the practice of aggravated assault or narcotics sales or witness intimidation or one of the other offenses listed in subdivision (e). This language implies that either prior conduct or acts committed at the time of the charged offenses can be used to establish the "primary activities" element of the gang enhancement offense.

We realize that this conclusion is directly contrary to that reached by the Fifth District, which has held that the element that a criminal street gang have as one of its primary activities the commission of certain enumerated crimes must be established by evidence of crimes other than the current charged offenses. (*In re Elodio O., supra,* 56 Cal.App.4th at pp. 1177, 1180-1181.) That court explained that case law was unclear about what type of evidence was necessary to prove primary activities. (*Id.* at p. 1180.) In a 1996 decision, the California Supreme Court found sufficient evidence to support a finding of primary activities based on expert evidence of past gang activity alone. (See *People* v. *Gardeley, supra,* 14 Cal.4th at p. 620.) The

appellate court read this high court reliance as a *requirement* that the evidence must be based on expert testimony about past offenses, not evidence of current charged crimes. (*In re Elodio O., supra,* at pp. 1180-1181.) Applying this reasoning, the appellate court reversed the gang enhancement for failure of proof because there was no evidence presented at trial of specific offenses that could constitute a primary activity other than the evidence of the charged crimes. (*Id.* at p. 1181.)

We disagree with this reasoning for several reasons. First, *Elodio O.* does not analyze the applicable statutory language, as the California Supreme Court guides us to do. (See *People* v. *Loeun, supra,* 17 Cal.4th at pp. 8-9; *People* v. *Gardeley, supra,* 14 Cal.4th at pp. 620-622; see also *In re Elodio O., supra,* 56 Cal.App.4th at pp. 1180-1181.) Second, we believe that *Elodio O.* misinterpreted the *Gardeley* decision. In that case, the California Supreme Court did not *require* evidence of past gang activity, but merely held the evidence presented of such past actions to be sufficient to establish that the group had, as one of its primary activities, one of the enumerated offenses. (See *People* v. *Gardeley, supra,* 14 Cal.4th at p. 620.) *Elodio O.* extrapolates from the facts of that case a rule limiting evidence to only that relied on by the California Supreme Court. While *Gardeley* makes it clear that evidence of past offenses may serve to establish primary activities, it is silent on whether evidence of current charged offenses may serve the same purpose. Thus, our interpretation of subdivision (f) of section 186.22 as allowing evidence of either or both past or current offenses to establish the primary activities element of the gang enhancement is not inconsistent with *Gardeley.*

Third, we find that the high court's most recent section 186.22 case—while interpreting a different subdivision of that statute—is more consistent with our reasoning than that of the Fifth District's opinion. Since the time that *Elodio O.* was announced, the California Supreme Court has held that a pattern of criminal gang activity may be shown by evidence of the offense with which the defendant is charged and proof of another offense committed on the same occasion by a fellow gang member. (*People* v. *Loeun, supra,* 17 Cal.4th at pp. 4-5, 8-13; see § 186.22, subd. (e).) In that case, the jury concluded that a pattern of gang activity was established based on the commission of an aggravated assault by one defendant and a similar assault committed on the same occasion by another gang member on the same victim. (*People* v. *Loeun, supra,* at pp. 6, 8.) The high court upheld the gang enhancement, concluding that the evidence presented at trial—evidence of the current charged criminal conduct of the defendant and his cohort—was sufficient to prove the statutory element of a pattern of gang activity. (*Id.* at pp. 8-14.) The *Loeun* court relied on the Legislature's use of the present tense in subdivision (e) of section 186.22 to determine that current charged

offenses of the codefendants could form the basis for establishing a pattern of gang activity. (*People* v. *Loeun, supra,* at pp. 10-13.)

Madrid argues against this reading of *Loeun,* noting that this case interprets a different subdivision of section 186.22. We appreciate the different statutory language used to define the term at issue in *Loeun* ("pattern of criminal gang activity") and the term at issue here ("primary activities" of gang), but we cannot agree that a similar analysis does not apply to both matters. We apply the same reasoning—a consideration of the specific language that the Legislature used in subdivision (f) of this statute—that the California Supreme Court used in its analysis of subdivision (e). In doing so, we reach the conclusion that the use of current charged offenses to establish the primary activities element of subdivision (f) is proper. We also note that the "pattern of gang activity" term is also used in subdivision (f), forging a link between the two subdivisions that reinforces our conclusion about the proper use of evidence of current charged offenses. Thus, we conclude that the trial court did not err in allowing the jury to consider evidence of current charges in its determination of the "primary activities" element of the gang enhancement.

B. *Other Claims*

Both Galvan and Madrid challenge the sufficiency of evidence to support the gang enhancement and contend that the jury instructions on the gang enhancement were incorrect. (See § 186.22, subd. (e).) These arguments are premised on our acceptance of their contention that the primary activity element of the gang enhancement allegation may not be proven by evidence of the charged offenses. As we have found to the contrary, these arguments necessarily fail. (See pt. II.A., *ante.*)

III., IV.*

. . . . . . . . . . . . . . . . . . . . . . . . . .

The judgments are affirmed.

Hanlon, P. J., and Poché, J., concurred.

Appellants' petitions for review by the Supreme Court were denied March 31, 1999. Mosk, J., and Brown, J., were of the opinion that the petitions should be granted.

---

*See footnote, *ante,* page 1135.