Filed 3/24/14  P. v. Michel CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RAMON MICHEL,<br><br>    Defendant and Appellant. | B246127<br><br>(Los Angeles County<br>Super. Ct. No. PA066402) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Beverly R. O'Connell, Judge.  Modified and affirmed.

Gloria C. Cohen, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews and David E. Madeo, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Ramon Michel was convicted by a jury of attempted murder (Pen. Code, §§ 664, 187, subd. (a) [count 1]),[1] shooting at an occupied motor vehicle (§ 246 [count 2]), assault with a firearm (§ 245, subd. (a)(2) [count 3]), and possession of a firearm by a felon (§ 12021, subd. (a)(1) [count 4]). The jury found true the allegations that: (1) the attempted murder was willful, deliberate, and premeditated; (2) defendant personally discharged a gun, which resulted in great bodily injury (§§ 12022.53, subds. (b)-(d), 12022.5, 1192.7, subd. (c), 667.5, subd. (c), 12022.7, subd. (a)); and (3) the shooting was committed for the benefit of, at the direction of, or in association with a criminal street gang, with the specific intent to promote, further, and assist in criminal conduct by gang members (§ 186.22, subd. (b)). The trial court imposed a sentence of 35 years to life, with a minimum parole eligibility term of 15 years.[2]

In this appeal from the judgment, defendant contends: (1) the evidence fails to support the finding that the gang's primary activities included the commission of one or more of the crimes listed in section 186.22, subdivision (e); and, in any event, (2) because he received a life sentence, the 10-year gang enhancement that was imposed under section 186.22, subdivision (b)(1)(C) must be stricken. We agree with the latter contention only.

---

[1]     All further undesignated statutory references are to the Penal Code.

[2]     On count 1—attempted murder—the court imposed a sentence of 35 years to life, with a minimum parole eligibility term of 15 years. The sentence on count 1 consisted of: (1) an indeterminate life sentence under section 664, subdivision (a); (2) a consecutive term of 25 years to life under section 12022.53, subdivision (d); (3) a consecutive 10-year term under section 186.22, subdivision (b)(1)(C); and (4) the 15-year parole ineligibility provision of section 186.22, subdivision (b)(5).

The sentences on counts 2 and 3 were imposed and stayed under section 654. The sentence on count 4 was ordered to be served concurrently with the sentence on count 1.

# BACKGROUND

On December 13, 2009, defendant, a member of the San Fernando (San Fer) gang, shot and injured Ortiz, who was in a car in a liquor store parking lot. The shooting was recorded on the store's surveillance videotape. Ortiz, a college baseball player from Texas, was wearing a Pittsburgh Pirates baseball cap with the letter "P." After defendant was arrested, defendant admitted in a recorded jailhouse conversation that he had shot Ortiz because he believed, based on the "P" on Ortiz's cap, that Ortiz was a member of a rival Pacoima gang.

Additional facts relevant to defendant's contention—that the evidence was insufficient to support a finding that the San Fer gang's primary activities included the commission of one or more of the crimes listed in section 186.22, subdivision (e)—are discussed below.

# DISCUSSION

## I.     Substantial Evidence Supports the Gang Enhancement

The California Street Terrorism Enforcement and Prevention Act (STEP Act) (§ 186.20 et seq.) applies to crimes committed "for the benefit of, at the direction of, or in association with any criminal street gang." (§ 186.22, subd. (b)(1).) The enhancement of a defendant's sentence under section 186.22 must be based upon substantial evidence of the existence of a criminal street gang whose members engage in a pattern of criminal gang activity. (*In re Jose T.* (1991) 230 Cal.App.3d 1455, 1462.)

"[T]he 'criminal street gang' component of a gang enhancement requires proof of three essential elements: (1) that there be an 'ongoing' association involving three or more participants, having a 'common name or common identifying sign or symbol'; (2) that the group has as one of its 'primary activities' the commission of one or more specified crimes; and (3) that the group's members either separately or as a group 'have engaged in a pattern of criminal gang activity.' (*People v. Gardeley* (1996) 14 Cal.4th

3

605, 617 (*Gardeley*).)" (*People v. Vy* (2004) 122 Cal.App.4th 1209, 1222 (*Vy*).)[3] Only the second element is at issue in this appeal.

Defendant contends the prosecution failed to establish the "primary activities" element of the STEP Act. For the reasons that follow, we conclude the contention lacks merit.

A. *The Primary Activities Element May be Proven Through Expert Testimony*

In *People v. Sengpadychith* (2001) 26 Cal.4th 316 (*Sengpadychith*), the court discussed the "primary activities" element of the STEP Act. The court stated that "[e]vidence of past or present conduct by gang members involving the commission of one or more of the statutorily enumerated crimes is relevant in determining the group's primary activities. Both past and present offenses have some tendency in reason to show the group's primary activity (see Evid. Code, § 210) and therefore fall within the general rule of admissibility (*id.*, § 351)." (*Id.* at p. 323.)

The court further stated that "[s]ufficient proof of the gang's primary activities might consist of evidence that the group's members *consistently and repeatedly* have committed criminal activity listed in the gang statute. Also sufficient might be expert testimony, as occurred in *Gardeley*, *supra*, 14 Cal.4th 605. There, a police gang expert testified that the gang of which defendant Gardeley had for nine years been a member was primarily engaged in the sale of narcotics and witness intimidation, [which are] both statutorily enumerated felonies. (See § 186.22, subd. (e)(4) & (8).) The gang expert based his opinion on conversations he had with Gardeley and fellow gang members, and on 'his personal investigations of hundreds of crimes committed by gang members,'

---

**3**     Section 186.22, subdivision (f) defines "criminal street gang" as "any ongoing organization, association, or group of three or more persons, whether formal or informal, having as one of its primary activities the commission of one or more of the criminal acts enumerated in paragraphs (1) to (25), inclusive, or (31) to (33), inclusive, of [section 186.22,] subdivision (e), having a common name or common identifying sign or symbol, and whose members individually or collectively engage in or have engaged in a pattern of criminal gang activity."

together with information from colleagues in his own police department and other law enforcement agencies.  (*Gardeley*, *supra*, at p. 620.)"  (*Sengpadychith*, *supra*, 26 Cal.4th at p. 324.)

B.     *In This Case*, *the Prosecution's Gang Expert Testified About the Gang's Primary Activities*

Detective Efren Gutierrez of the Los Angeles Police Department testified as the prosecution's gang expert in this case.  His testimony included the following:  While working as a gang enforcement officer, Gutierrez became familiar with the activities of gangs in general.  Gutierrez maintained a computerized database—known as "Cal-Gangs"—that collects information, photographs, tattoos, residences, and known locations of gang members throughout the state.  In addition, Gutierrez served as the gang enforcement officer who monitored the San Fer gang from 2000 to 2005.  As a result of that assignment, Gutierrez became familiar with the activities of defendant's gang, which has about 700 members and associates and is one of the oldest gangs in the San Fernando Valley.

Based on his professional knowledge and expertise, which was not challenged at trial, Gutierrez testified that the primary activities of the San Fer gang included murder, shooting rival gang members, robbery, drug trafficking, and witness intimidation.  Those activities are enumerated in section 186.22, subdivision (e)(1) [assault with a deadly weapon or by means of force likely to produce great bodily injury], (e)(2) [robbery], (e)(3) [unlawful homicide], (e)(4) [transportation, possession for sale, manufacture, or sale of controlled substances], and (e)(24) [criminal threats].

C.     *Defendant Did Not Object Below That Gutierrez's Testimony Lacked Foundation; In Any Event*, *His Objection Lacks Merit*

Although he did not object below, defendant contends on appeal that Gutierrez's testimony regarding the San Fer gang's principal activities lacked foundation.  According to defendant's opening brief, Gutierrez "stated no facts as to where or when the alleged

5

crimes were committed or how he knew about them. Without these facts it cannot be concluded that there was a sufficient showing to prove the 'primary activities' element."

We conclude the objection was not preserved for appellate review. "In an adversary proceeding such as a criminal trial, the side which later claims that error was committed must object to the reception of questioned evidence or other procedure; a failure to do so is normally considered a waiver of any objection. [Citations.]" (*People v. Campbell* (1965) 233 Cal.App.2d 38, 47-48.)

In any event, the objection lacks merit. As the court in *Sengpadychith* noted, expert testimony, which was similar to Gutierrez's expert testimony in this case, was used to establish the principal activities of a gang in *Gardeley*, *supra*, 14 Cal.4th at page 620. (*Sengpadychith*, *supra*, 26 Cal.4th at p. 324.) Similarly, "[e]xpert testimony of such a nature was held sufficient to satisfy the 'primary activities' element of section 186.22(f) in *People v. Duran* (2002) 97 Cal.App.4th 1448, 1465 . . . , *People v. Galvan* (1998) 68 Cal.App.4th 1135, 1138, and *People v. Olguin* (1994) 31 Cal.App.4th 1355, 1370. (See also *People v. Killebrew* (2002) 103 Cal.App.4th 644, 656-657 [disapproved on another ground in *People v. Vang* (2011) 52 Cal.4th 1038, 1047, fn. 3] [discussing various gang issues that California courts have recognized as proper subjects for expert testimony].)" (*Vy*, *supra*, 122 Cal.App.4th at p. 1223, fn. 9.)

Defendant's reliance on *In re Alexander L.* (2007) 149 Cal.App.4th 605 is misplaced. In that case, the gang expert (Lang) was not asked to explain the basis of his knowledge regarding the Varrio Viejo gang's primary activities. Lang's entire testimony on the gang's primary activities was that "he 'kn[e]w' that the gang had been involved in certain crimes. No specifics were elicited as to the circumstances of these crimes, or where, when, or how Lang had obtained the information. He did not directly testify that criminal activities constituted [the Varrio Viejo gang's] primary activities. Indeed, on cross-examination, Lang testified that the vast majority of cases connected to [the Varrio Viejo gang] that he had run across were graffiti related." (*Id.* at pp. 611-612, fn. omitted.) In this case, on the other hand, Gutierrez's testimony established that he had investigated and spoken to members of the San Fer gang, that he had updated the state

6

database on criminal street gangs, and that he had personally served as the gang enforcement officer who monitored the San Fer gang from 2000 to 2005. The record supports a reasonable inference that this knowledge and experience formed the basis for Gutierrez's expert opinion concerning the primary activities of the San Fer gang.

**II.     The Sentence Must Be Modified by Striking the 10-Year Gang Enhancement**

Section 186.22, subdivision (b)(5) provides: "Except as provided in paragraph (4), any person who violates this subdivision in the commission of a felony punishable by imprisonment in the state prison for life shall not be paroled until a minimum of 15 calendar years have been served." In *People v. Lopez* (2005) 34 Cal.4th 1002, 1004, the court held that where, as here, the 15-year minimum parole eligibility provision of subdivision (b)(5) applies, the 10-year gang enhancement under subdivision (b)(1)(C) of section 186.22 does not apply.

In this case, the trial court applied both the 10-year enhancement under section 186.22, subdivision (b)(1)(C) *and* the 15-year minimum parole eligibility term pursuant to section 186.22, subdivision (b)(5). Defendant contends, and the Attorney General agrees, that the 10-year enhancement must be stricken. Defendant is correct. "Where, as here, a defendant is sentenced to an indeterminate life term for attempted murder, the 15-year parole eligibility provision of section 186.22, subdivision (b)(5) applies rather than the 10-year gang enhancement. (See *People v. Lopez*, *supra*, 34 Cal.4th at p. 1004.)" (*People v. Arauz* (2012) 210 Cal.App.4th 1394, 1404-1405.)

## DISPOSITION

On count 1, attempted murder, the 10-year gang enhancement under section 186.22, subdivision (b)(1)(C)) is stricken.  In all other respects, the judgment is affirmed. The trial court is directed to prepare a corrected abstract of judgment and to forward a certified copy to the Department of Corrections and Rehabilitation.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, J.*

We concur:

EPSTEIN, P. J.

MANELLA, J.

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.