Filed 5/29/15  In re J.B. CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re J.B., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>J.B.,<br><br>        Defendant and Appellant. | A142586<br><br>(Contra Costa County<br>Super. Ct. No. J13-00638) |

Appellant J.B. pled no contest to felony possession of a firearm by a minor.  At a dispositional hearing, the juvenile court found appellant is a member of Family Over Everything (FOE), and that FOE is a criminal street gang within the meaning of Penal Code[1] section 186.22.  The court imposed gang conditions as a part of appellant's parole.  The conditions prohibit appellant from participating in gang activities and associating with known gang members, among other things.  Appellant now appeals the gang conditions, arguing the court erred in finding FOE is a criminal street gang.  Specifically, appellant asserts there is insufficient evidence to demonstrate that one of FOE's primary activities is the commission of criminal acts.  We affirm.

---

[1] All statutory references are to the Penal Code.

# I. BACKGROUND

In May 2013, a police officer located a stolen car and then spotted two boys leaving the area. The officer recognized the boys as appellant and B.C., who he believed to be members of FOE, and commanded them to stop. After a chase, the officer apprehended appellant and discovered a firearm tucked in his shorts. Appellant waived his *Miranda*[2] rights and stated he carried the gun for protection.

The district attorney filed a juvenile wardship petition, alleging counts for (1) possession of a firearm in a school zone (§ 626.9), and (2) possession of a firearm by a minor (§ 29610). Pursuant to an agreement with the prosecutor, appellant pled no contest to the second count and the first count was dismissed. The parties also agreed the conviction would be reduced to a misdemeanor after a year, so long as appellant satisfied the terms of his probation. The juvenile court subsequently adjudged appellant a ward of the court, placed him on probation, and committed him to a six-month rehabilitation program.

At a June 2013 disposition hearing, the court set the terms of appellant's probation, and prohibited him from participating in any gang activity or visiting any location known to be an area of gang-related activities. Appellant's counsel noted FOE was located in appellant's apartment building. The court clarified appellant could continue residing at his home, but he could not be at that address with members of FOE. The court also specified that for the purposes of these conditions, the term "gang" means a criminal street gang as defined by section 186.22. Appellant agreed to the general gang terms, but asserted FOE is not criminal street gang. The juvenile court granted appellant a hearing on the issue.

The prosecution's sole witness at the hearing on the dispute over FOE was Probation Officer Amy Decker. During voir dire, Decker testified she had received close to 200 hours of training on the investigation of gang cases and regularly spoke with police and members of the local community about gang issues. Only 15 minutes of

---

[2] *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*).

Decker's training related to FOE in particular. Decker had also gathered information about FOE members from social media Web sites, police reports, and probation searches. She also spoke with three members of the group. The court approved Decker as a gang expert.

Decker testified she became aware of FOE sometime in the summer of 2012, and the group currently had at least seven members. She opined the primary activities of FOE included possession of firearms and robbery. As a basis for this opinion, Decker stated "most of [FOE's] members that are on probation are on probation for possession of firearms and/or robbery or grand theft." Decker also described three incidents involving suspected FOE members. First, in October 2011, A.J. was arrested and later convicted of robbery. Decker was not sure if A.J. was a member of FOE at that time, because she only became aware of the group in the summer of 2012. Second, in February 2012, M.J. was arrested for robbery of a cell phone. Again Decker was not certain whether M.J. was a member of FOE at the time. Third, B.C., who founded FOE sometime in 2012, was arrested for carrying a loaded firearm in public on August 31, 2013, and was subsequently convicted.[3] Another member of FOE, M.M., was at the scene with B.C., but he managed to escape the police.

After the hearing, the court issued a written order concluding FOE is a criminal street gang for purposes of probation conditions. Among other things, the court found FOE's primary activities included robberies and possession of firearms.

## II. DISCUSSION

To qualify as a criminal street gang, FOE must satisfy four criteria: (1) it must be an "ongoing organization, association, or group of three or more persons"; (2) the group must have "as one of its primary activities the commission of one or more of the criminal acts" enumerated in section 186.22, subdivision (e)(1)–(25), (31)–(33), including robbery and possession of a firearm; (3) the group must have "a common name or common

---

[3] The Attorney General asserts B.C.'s file shows he sustained two weapons charges in August and September 2013, but it appears those charges arose out of the same incident.

identifying sign or symbol"; and (4) its members must "individually or collectively engage in or have engaged in a pattern of criminal gang activity." (§ 186.22, subd. (f).) Appellant concedes the prosecution met its burden as to the first, third, and fourth criteria, and he does not deny he is a member of FOE. However, he asserts there is insufficient evidence to support the court's finding that FOE's primary activities include the commission of crimes listed in section 186.22, subdivision (e), namely robbery and possession of firearms.

We must affirm the court's finding regarding FOE's primary activities if it is supported by substantial evidence. (See *In re Alexander L.* (2007) 149 Cal.App.4th 605, 612 (*Alexander L.*).) On substantial evidence review, we " 'view the whole record in a light most favorable to the judgment, resolving all evidentiary conflicts and drawing all reasonable inferences in favor of the decision of the trial court.' " (*DiMartino v. City of Orinda* (2000) 80 Cal.App.4th 329, 336.) " 'We may not substitute our view of the correct findings for those of the trial court; rather, we must accept any reasonable interpretation of the evidence which supports the trial court's decision.' " (*Ibid*.) "Substantial evidence, of course, is not synonymous with 'any' evidence." (*Toyota Motor Sales U.S.A., Inc. v. Superior Court* (1990) 220 Cal.App.3d 864, 871.) Rather, it is "evidence of ponderable legal significance, evidence that is reasonable, credible and of solid value." (*Roddenberry v. Roddenberry* (1996) 44 Cal.App.4th 634, 651.) The focus is on the quality, not the quantity, of the evidence. (*Ibid.*)

"Proof that a gang's members consistently and repeatedly have committed criminal activity listed in section 186.22, subdivision (e) is sufficient to establish the gang's primary activities. On the other hand, proof of only the occasional commission of crimes by the gang's members is insufficient. [Citation] Past offenses, as well as the circumstances of the charged crime, have some tendency in reason to prove the group's primary activities, and thus both may be considered by the [court] on the issue of the group's primary activities." (*People v. Duran* (2002) 97 Cal.App.4th 1448, 1464–1465.) The group's primary activities may also be proven through the "testimony of a gang expert, founded on his or her conversations with gang members, personal investigation of

4

crimes committed by gang members, and information obtained from colleagues in his or her own and other law enforcement agencies." (*Id.* at p. 1465.)

Sufficient evidence to support the primary activity element was found in *People v. Gardeley* (1996) 14 Cal.4th 605 (*Gardeley*), and *People v. Vy* (2004) 122 Cal.App.4th 1209. In *Gardeley*, a police detective, testifying as an expert, opined the primary activity of the gang in question was the sale of narcotics. (14 Cal.4th at pp. 619, 620.) The detective based his opinion on "conversations with the defendants and with other [gang] members, his personal investigations of hundreds of crimes committed by gang members, as well as information from his colleagues and various law enforcement agencies." (*Id.* at p. 620.) In *People v. Vy*, the gang in question had been existence for about two years, and the evidence showed its members had committed three serious and violent crimes over a period of less than three months. (122 Cal.App.4th at p. 1225.) "[T]hat [the gang's] level of criminal activity lay dormant for most of its existence d[id] not preclude a finding that it was a gang under the enhancement statute, where there was evidence of consistent and repeated criminal activity during a short period before the subject crime." (*Id.* at pp. 1225–1226, fn. omitted.) Proof of the gang's primary activities was also satisfied by a police gang expert, who "gave significant expert testimony that [the gang] was engaged in criminal actions that constituted predicate crimes under the gang statute." (*Id.* at p. 1226.)

Insufficient evidence was presented on the primary activities element in *Alexander L., supra*, 149 Cal.App.4th 605, and *In re Nathaniel C.* (1991) 228 Cal.App.3d 990. In *Alexander L.*, the prosecution's expert testified he knew the gang in question had been involved in certain crimes, but did not provide any specifics or foundation for his opinion. (149 Cal.App.4th at pp. 611–612.) Nor did he opine on whether criminal activities constituted the gang's primary activities. (*Id.* at p. 612.) The expert also stated two of the gang's members had been convicted of assault. (*Id.* at pp. 612–613.) However, the court found that, without more, these two convictions did not prove the gang members had " '*consistently and repeatedly*' " committed criminal activity enumerated in section 186.22, subdivision (e). (*Alexander L.*, at p. 614.) Likewise, in *In*

5

*re Nathaniel C.*, the court found insufficient an expert's statement "that the primary activity of all of the gangs in his area is criminal." (228 Cal.App.3d at p. 1004.) The expert made a point of stating the gang in question was not located in his jurisdiction, and only gave a general list of the crimes he had in mind. (*Id.* at pp. 1004–1005.)

The prosecution's case here was stronger than in *Alexander L.* and *In re Nathaniel C.*, and though it is a close question, we find substantial evidence supports the juvenile court's finding that the primary activities of FOE included one or more of the crimes listed in section 186.22, subdivision (e). Here, Amy Decker opined without objection, based on her 200 hours of training, discussions with police, gathering of information about FOE members from social media Web sites, police reports, and probation searches, and conversations with three members that FOE's primary activities included possession of firearms and robbery. Decker's testimony was sufficient to establish the primary activity element. (*People v. Sengpadychith* (2001) 26 Cal.4th 316, 324 [expert opinion permissible to prove primary activity, based on conversations with gang members and law enforcement]; *Gardeley, supra,* 14 Cal.4th at p. 620 [expert opinion, based on conversations with gang members, personal investigation, and information from law enforcement, may provide sufficient basis to establish primary activity of gang].)

In addition to Decker's expert testimony, however, the prosecution introduced evidence four of FOE's seven known members, including appellant, committed the crimes of robbery or firearm possession between 2011 and 2013. Appellant argues two of those individuals, A.J. and M.J., were not members of FOE when they committed the crimes in question. As appellant points out, the police did not become aware of FOE until the summer of 2012, while A.J. and M.J. were arrested in October 2011 and February 2012, respectively. But the court could have reasonably inferred their membership in FOE predated the discovery of the group by police. Even if FOE was formed in the summer of 2012, appellant and B.C. were arrested for firearm charges during a four-month period in 2013, and FOE members fled the scene at their arrests. In light of these facts, the small size of FOE, and the gang's recent inception, appellant's

and B.C.'s crimes are probative of FOE's primary activities. Based on this evidence, as well as Decker's expert opinion that FOE's primary activities included illegal possession of firearms, the juvenile court had reason to conclude the prosecution satisfied its burden.[4, 5]

### III.  DISPOSITION

The terms of probation imposed by the trial court, including the gang conditions, are affirmed.

_____
Margulies, J.

We concur:

_____
Humes, P.J.

_____
Dondero, J.

_____

[4] Appellant also argues three current FOE members, including M.M., admit they are members of the well-established Norteño street gang, and thus may have committed crimes as Norteño gang members rather than as FOE gang members. But it was reasonable for the juvenile court to have drawn contrary inferences.

[5] Appellant asserts the gang conditions impinge on his constitutional rights to travel and freedom of association. He reasons they prohibit him from associating with some of his closest friends and neighbors. The argument was forfeited since appellant failed to raise it below. (See *In re Sheena K.* (2007) 40 Cal.4th 875, 885 ["Applying the [forfeiture] rule to appellate claims involving discretionary sentencing choices or unreasonable probation conditions is appropriate, because characteristically the trial court is in a considerably better position than the Court of Appeal to review and modify a sentence option or probation condition that is premised upon the facts and circumstances of the individual case."].)