[No. F036957. Fifth Dist. Nov. 8, 2002.]

THE PEOPLE, Plaintiff and Respondent, v.
LLOYD GLENN KILLEBREW, Defendant and Appellant.

646

## COUNSEL

Gordon S. Brownell, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Jo Graves, Assistant Attorney General, Lloyd G. Carter and Michelle L. West, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**CORNELL, J.**—This case involves the use of expert testimony about criminal street gangs. Lloyd Glenn Killebrew was convicted of conspiring to possess a handgun, a felony. (Pen. Code, §§ 182, 12031, subd. (a)(2)(C).) Killebrew did not have a handgun in his possession, but it was alleged that he was part of a conspiracy to possess the handgun. At trial, a police officer testified as an expert on gangs to establish not only Killebrew's membership in a criminal street gang, but his subjective knowledge and intent to possess the handgun.

We conclude that the testimony about Killebrew's subjective knowledge and intent was inadmissible and that the evidence was insufficient to establish that Killebrew was involved in a conspiracy to possess the handgun. Accordingly, we reverse the judgment.

### FACTUAL AND PROCEDURAL SUMMARY

In the early evening hours of August 6, 1999, at Casa Loma Park, members of the Country Boy Crips criminal street gang, as well as many women and children, attended a gathering to honor a friend who had died. A black Jeep Cherokee drove by the park. Gunfire from a rifle erupted from inside the vehicle. At least two people were killed. The shooters identified themselves as members of the East Side Crips criminal street gang.

The Bakersfield Police Department immediately instituted a heightened state of alert, anticipating retaliation for the shooting. Two patrol officers[1] observed three cars driving in East Side Crip territory shortly after midnight. The cars maneuvered in a manner that led the officers to believe the occupants of the cars were traveling together. The officers pulled alongside the cars. Inside each of the first two cars, a Chevrolet and a Mazda, the officers saw four young Black males. In the third car, a Chrysler, the officers saw two young Black males and at least one other person in the backseat. One officer testified there were two in the backseat, while the other officer testified he saw movement in the backseat establishing there was at least one passenger. One officer testified that a backseat passenger had a "puffy braids" hairstyle.

Of the 10 men the officers observed, they recognized only one passenger,[2] and they knew this individual to be a member of the East Side Crips. The officers concluded that everyone in the three cars was a member of the East Side Crips because the cars carried young Black males, it appeared the cars were being driven together, and one passenger was an East Side Crip. Moreover, the officers reasoned that because the East Side Crips would be expecting retaliation for the Casa Loma Park shooting, they would travel only in large groups that night and would carry weapons for protection.

The officers maneuvered their vehicle behind the Chevrolet, the vehicle in which the known gang member was a passenger, and activated the lights on their patrol car. The Chevrolet made a left turn and stopped. When the officers approached, they observed the rear seat passenger putting a handgun under the front seat. The four occupants were arrested without incident and a handgun was recovered.

The other two vehicles made U-turns when the Chevrolet made the left turn. One officer observed the two vehicles drive by the location of the stop a second time, making a U-turn at the same intersection. Officers were dispatched to locate these two vehicles.

The Mazda and Chrysler were found at a nearby taco stand. Seven young Black men were identified as occupants of these vehicles. They had stopped for food and to make a telephone call. A search of the taco stand located a handgun hidden in a shoe box next to a grease Dumpster. All seven men were arrested. The only fingerprint recovered from either the box or the gun did not belong to any of the arrested men.

We have yet to mention Killebrew. He was not in the Chevrolet or the Mazda. Killebrew was seen that evening observing the stop of the Chevrolet

[1]Gary Carruesco and Martin Heredia.
[2]Leon Anderson.

from a street corner. Two unidentified Black men were seen walking away from his location, although no one saw these two with Killebrew. Nonetheless, Killebrew was arrested.

The prosecution theorized that the threat of retaliation compelled the occupants of the three vehicles to conspire to possess the handgun in the Chevrolet and the handgun found at the taco stand, a violation of Penal Code section 12031, subdivision (a)(1).[3] The participants were all alleged to be active members of a criminal street gang. (§ 186.22, subd. (a).)[4]

The prosecution attempted to place Killebrew in one of the three vehicles and attempted to tie the handgun found at the taco stand to the Mazda. The prosecution relied on the testimony of Officer Carruesco who testified there were four occupants in the Chrysler. Three of the occupants were arrested at the taco stand. The prosecution argued Killebrew was the fourth occupant in the Chrysler and was seated in the front passenger seat. This theory was undermined by the fact that both Carruesco and Heredia testified that they knew Killebrew and would have recognized him if they had seen him that evening. They both observed and did not recognize the front seat passenger in the Chrysler. Moreover, Killebrew did not have the "puffy braids" hairstyle of the backseat passenger.

Three of the occupants of the Mazda, Charles Fair, Jr., Brian Duke, and Marlon Edward Fair, denied a gun was in the Mazda and that Killebrew was in the Chrysler. Sean Daniel Powell testified he was in the Chrysler that night and Killebrew was not.

Ramon Dontee Redding, a jailhouse informant, testified in exchange for dismissal of drug possession charges that Charles Fair and Duke told him that Dwight Jones, the fourth passenger in the Mazda, possessed the gun. Redding also testified that Fair and Duke both stated that Killebrew was not in any of the three vehicles.

DISCUSSION

1. *Admissibility of Evidence*

Killebrew argues that the trial court erred in allowing the prosecution to introduce extensive evidence about the Casa Loma Park shooting and

---

[3]All statutory references are to the Penal Code unless otherwise stated.

[4]In three separate unpublished opinions, *People v. Hanks* (Nov. 14, 2001, F035120) review granted March 13, 2002, S102982, *People v. Anderson* (Oct. 15, 2001, F035357), and *People v. Hester* (Nov. 7, 2001, F034897) review granted March 13, 2002, S102961, we reversed the trial court's denial of the motion to suppress the handgun found in the Chevrolet and the resulting convictions because there was no probable cause to stop the vehicle.

in allowing William Darbee, a Bakersfield police officer who testified as an expert witness on gangs, to give an opinion about the intent and knowledge of gang members when in the presence of guns.

## A. The Casa Loma Park Shooting

The prosecution's theory was premised on the effect the Casa Loma Park shooting would have on members of the East Side Crips. According to the prosecution, the Casa Loma Park shooting was a major gang event guaranteed to generate retaliation. The prospect of retaliation was the basis for the actions taken by the officers that night as well as the foundation of the prosecution's conspiracy theory.

Instead of allowing a brief summary of the Casa Loma Park shooting, the trial court allowed extensive testimony about the events at the park. Killebrew argues the trial court erred in so doing because the probative value of the evidence was substantially outweighed by its prejudicial effect and the evidence was cumulative. (Evid. Code, § 352.)

■ Evidence Code section 352 gives the trial court discretion to determine if otherwise relevant evidence should be excluded because its probative value is substantially outweighed by its prejudicial effect or if the evidence is cumulative.[5] We review for an abuse of discretion while giving the trial court's determination deference. (*People v. Kipp* (2001) 26 Cal.4th 1100, 1121 [113 Cal.Rptr.2d 27, 33 P.3d 450].) For Evidence Code section 352 purposes, prejudice refers to evidence that uniquely tends to evoke an emotional bias against the defendant without regard to its relevance on material issues. (*People v. Kipp, supra,* at p. 1121.)

■ The evidence was relevant since it provided the only support for the prosecution's theory of the case. Without evidence of the Casa Loma Park shooting, there would be no motive for the gang members to conspire to carry the guns. It was the prospect of retaliation, according to the prosecution, that motivated the gang members.

Evidence, however, that Killebrew was an East Side Crip and that the East Side Crips were responsible for the shooting undoubtedly evoked the kind of emotional bias that Evidence Code section 352 is designed to preclude from the courtroom. Although the issue is close, we are not prepared to say the

[5]Evidence Code section 352 states "[t]he court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

trial court abused its discretion when it determined the prejudicial effect of the evidence did not *substantially* outweigh its relevance.[6]

### B. *Opinion Testimony*

Generally, a witness may testify only about matters of which he or she has personal knowledge. (Evid. Code, § 702, subd. (a).) A lay witness may provide opinion testimony if such opinion is rationally based on the perception of the witness, and is helpful to a clear understanding of his or her testimony. (*Id.*, § 800.)

An expert witness, on the other hand, is one who has special knowledge, skill, experience, training, or education sufficient to qualify as an expert on the subject to which his or her testimony relates. (Evid. Code, § 720.) An expert may offer opinion testimony if the subject is sufficiently beyond common experience that it would assist the trier of fact. (*Id.*, § 801.) The opinion must be based on matter perceived by, or personally known, or made known to the witness at or before the hearing that is of the type that reasonably may be relied on in forming an opinion on the subject to which the expert's testimony relates. (*Ibid.*) On direct examination, an expert may state the reasons for his or her opinion and the matter upon which the opinion is based. (*Id.*, § 802.)

Otherwise admissible expert opinion testimony which embraces the ultimate issue to be decided by the trier of fact is admissible. (Evid. Code, § 805.) This rule, however, does not permit the expert to express any opinion he or she may have. (*Piscitelli v. Friedenberg* (2001) 87 Cal.App.4th 953, 972 [105 Cal.Rptr.2d 88].) " 'Undoubtedly there is a kind of statement by the witness which amounts to no more than an expression of his general belief as to how the case should be decided . . . . There is no necessity for this kind of evidence; to receive it would tend to suggest that the judge and jury may shift responsibility for decision to the witnesses; and in any event it is wholly without value to the trier of fact in reaching a decision.' " (*Summers v. A.L. Gilbert Co.* (1999) 69 Cal.App.4th 1155, 1182-1183 [82 Cal.Rptr.2d 162].)

A bright line cannot be drawn to determine when opinions that encompass the ultimate fact in the case are or are not admissible. The issue has long

---

[6]Darbee also testified that Killebrew was the "shot caller" for the East Side Crips that day, i.e., he ordered the drive-by shooting at Casa Loma Park. This rank speculation should never have been submitted by the prosecution and undoubtedly increased the prejudice of the Casa Loma Park testimony. The trial court undoubtedly did not know, however, that the prosecution was going to elicit such testimony when it overruled Killebrew's objection to the Casa Loma Park evidence. Our disposition of this case renders further consideration of the issue unnecessary.

been a subject of debate. (See generally 1 Witkin, Cal. Evidence (4th ed. 2000) Opinion Evidence, §§ 88-97, pp. 634-646; 1 McCormick on Evidence (5th ed. 1999) § 12, pp. 51-57.) In *People v. Wilson* (1944) 25 Cal.2d 341, 349 [153 P.2d 720] the Supreme Court said: "There is no hard and fast rule that the expert cannot be asked a question that coincides with the ultimate issue in the case. 'We think the true rule is that admissibility depends on the nature of the issue and the circumstances of the case, there being a large element of judicial discretion involved. . . . Oftentimes an opinion may be received on a simple ultimate issue, even when it is the sole one, as for example where the issue is the value of an article, or the sanity of a person; because it cannot be further simplified and cannot be fully tried without hearing opinions from those in better position to form them than the jury can be placed in.' [Citations.]"

■ Darbee testified at length about gangs and gang psychology as the prosecution's expert witness. For example, he identified the major gangs in the Bakersfield area, testified that the major criminal activities of the East Side Crips were narcotics sales, burglary, armed robbery, and murder, opined that each of the 12 individuals were members of the East Side Crips, and that the East Side Crips would expect the Country Boy Crips to retaliate as a result of the Casa Loma Park shooting.

Killebrew does not suggest the above opinions were inadmissible. Darbee's opinions, however, went much further. Darbee also testified that when one gang member in a car possesses a gun, every other gang member in the car knows of the gun and will constructively possess the gun.[7] Killebrew contends that these opinions on the subjective knowledge and intent of each occupant in the car were improperly admitted.

The trial court felt compelled to admit the testimony pursuant to *People v. Gardeley* (1996) 14 Cal.4th 605 [59 Cal.Rptr.2d 356, 927 P.2d 713]. *Gardeley* involved the prosecution of gang members for assault with a deadly weapon, attempted murder, and robbery. In an effort to establish the elements of a violation of section 186.22, the People called a detective from the San Jose Police Department as an expert witness. The detective testified on the primary purpose of the Family Crip criminal street gang, and that the

---

[7]Darbee reasoned as follows: First, all the occupants in the cars were East Side Crips. Second, since the Casa Loma Park shooting was such an important event to gang members, the East Side Crips would only travel in large groups for their mutual protection that night. Third, any group of East Side Crips that ventured out that night would be armed for protection since retaliation would be expected. Finally, he opined that everyone in the group that night would know there was a gun in the car and would mutually possess the gun. Darbee opined that even the occupants of the Chrysler, to which no gun was ever linked, would know of the guns in the other two vehicles and would mutually possess those guns.

actions for which the defendants were being prosecuted were gang related. (*People v. Gardeley, supra,* 14 Cal.4th at pp. 612-613.) The detective also described three separate criminal incidents and testified that each incident was gang related. (*Id.* at p. 613.)

The Supreme Court began its analysis with Evidence Code section 801's requirement that expert testimony must be on a topic " 'sufficiently beyond common experience that the opinion of an expert would assist the trier of fact.' " (*People v. Gardeley, supra,* 14 Cal.4th at p. 617.) The Supreme Court summarily concluded that "[t]he subject matter of the culture and habits of criminal street gangs, of particular relevance here, meets this criterion." (*Ibid.*)

The Supreme Court next addressed the type of matter on which an expert may rely in formulating his opinion. After quoting Evidence Code section 801, subdivision (b), the court stated:

"Expert testimony may also be premised on material that is not admitted into evidence so long as it is material of a type that is reasonably relied upon by experts in the particular field in forming their opinions. [Citations.] Of course, any material that forms the basis of an expert's opinion testimony must be reliable. [Citation.] For 'the law does not accord to the expert's opinion the same degree of credence or integrity as it does the data underlying the opinion. Like a house built on sand, the expert's opinion is no better than the facts on which it is based.' [Citation.]

"So long as this threshold requirement of reliability is satisfied, even matter that is ordinarily *inadmissible* can form the proper basis for an expert's opinion testimony. [Citations.] And because Evidence Code section 802 allows an expert witness to 'state on direct examination the reasons for his opinion and the matter . . . upon which it is based,' an expert witness whose opinion is based on such inadmissible matter can, when testifying, describe the material that forms the basis of the opinion. [Citations.]

"A trial court, however, 'has considerable discretion to control the form in which the expert is questioned to prevent the jury from learning of incompetent hearsay.' [Citation.] A trial court also has discretion 'to weigh the probative value of inadmissible evidence relied upon by an expert witness . . . against the risk that the jury might improperly consider it as independent proof of the facts recited therein.' [Citation.] This is because a witness's on-the-record recitation of sources relied on for an expert opinion does not transform inadmissible matter into 'independent proof' of any fact. [Citations.]" (*People v. Gardeley, supra,* 14 Cal.4th at pp. 618-619.)

The Supreme Court concluded that the detective's testimony was admissible and that this testimony, when combined with the admissions of the defendants, provided the basis from which the jury could reasonably infer the Family Crip gang was a criminal street gang as defined in section 186.22, subdivision (e). (*People v. Gardeley, supra,* 14 Cal.4th at p. 621.)

 The trial court apparently interpreted *Gardeley* as allowing police officers who testify as experts on gangs to state any opinions they may have about gangs and gang activities. Not so. *Gardeley* merely applied established law to the facts of the case and concluded (1) the culture and habits of criminal street gangs are a proper subject for expert testimony, and (2) the testimony of the detective established several necessary elements to prove that the Family Crips was a criminal street gang within the meaning of section 186.22.

To determine the admissibility of Darbee's testimony in this case, the trial court was required to apply the law to the facts and opinions offered by the witness. The trial court failed to do so, instead concluding without analysis that all officer opinions on gangs are admissible.

The trial court's erroneous reading of *Gardeley* does not compel the conclusion that Darbee's opinions were inadmissible. We must apply the law to the facts to make this determination.

Darbee's testimony is not the type of culture and habit testimony found in the reported cases. *Gardeley* addressed testimony about the primary purpose of the gang, and whether the attack was gang-related activity.[8]

In *People v. Olguin* (1994) 31 Cal.App.4th 1355 [37 Cal.Rptr.2d 596] the expert witness/police officer testified about the composition of the Southside F Troop Hispanic street gang, the importance of territory to Hispanic street gangs, the use of graffiti by Hispanic street gangs to mark their territory, the importance of respect to Hispanic street gangs, and that defacing gang graffiti is a sign of disrespect that often leads to violent confrontations. (*Id.* at p. 1367.) The officer also opined that two other crimes were committed by

---

[8]The Supreme Court summarized the detective's testimony as follows: "It is common practice for several gang members acting in concert to assault a person in full view of residents of an area where the gang sells drugs. Such attacks serve to intimidate the residents and to dissuade them from reporting the gang's drug-dealing activities to police. Gang members typically view a dispute or argument with someone who is not a member of the gang as a 'challenge' to the gang's authority, and they respond by trying to 'dominate' the person physically, that is, they might 'beat the person senseless, throw rocks over his head, kick him' and do this 'where a lot of people can witness it.' When gang members 'terrorize people . . . [who] have to live there,' the 'fear factor' allows the gang to 'go right back to dope dealing' day after day in the same area." (*People v. Gardeley, supra,* 14 Cal.4th at p. 613.)

gang members for the gang's benefit and that this crime (murder precipitated by someone defacing gang graffiti) was committed for the benefit of the gang. (*Ibid.*)

The appellate court rejected the defendants' assertion that the testimony should have been excluded pursuant to Evidence Code section 352, concluding the probative value of the testimony on the issues of motive and intent far outweighed its prejudicial effect. (*People v. Olguin, supra,* 31 Cal.App.4th at p. 1370.)

The defendants also claimed the inability of the officer to recall a specific instance of Southside F Troop gang retaliation for another gang defacing its graffiti demonstrated a lack of foundation. The appellate court noted, however, that the officer was testifying about Hispanic gangs in general, and not the Southside F Troop gang in particular. The appellate court held that a proper foundation existed for this general testimony. (*People v. Olguin, supra,* 31 Cal.App.4th at p. 1370.)

The appellate court also rejected the defendants' argument that the officer's testimony exceeded the permissible scope of expert testimony because the officer drew inferences from the evidence, which was a proper function of the jury. The appellate court held that expert testimony in the area of gang psychology and sociology was permissible because the testimony was sufficiently beyond common experience. (*People v. Olguin, supra,* 31 Cal.App.4th at p. 1371.) The appellate court concluded that the reasons for the defendants' seeking out the person who defaced their gang graffiti, and their violent response when a member of another gang yelled the name of his gang, fell within this category of gang psychology and sociology. (*Ibid.*)

Finally, the defendants argued that the trial court improperly allowed the officer to opine on one defendant's subjective expectation that violence would occur. The appellate court did not disagree with the defendant's legal proposition, but rejected the argument because the officer did not opine as to any defendant's state of mind, but instead testified what gang members would typically expect. (*People v. Olguin, supra,* 31 Cal.App.4th at p. 1371.)

In *People v. Gamez* (1991) 235 Cal.App.3d 957 [286 Cal.Rptr. 894],[9] another case involving the Southside F Troop, three police officers testified as experts that the attempted murder was committed as retaliation for a prior shooting, and that the defendant was a member of the Southside F Troop, a

---

[9]Disapproved in *People v. Gardeley, supra,* 14 Cal.4th at page 624, to the extent *Gamez* holds that the predicate offenses to establish a violation of section 186.22, subdivision (b)(1) must be gang related.

criminal street gang. (*Id.* at p. 964.) The defendant attacked this testimony as not the type of testimony that would assist the trier of fact and lacking in foundation because the officers utilized unreliable information in forming their opinions. (*Ibid.*)

 The appellate court held that testimony about the relationship between various gangs, the membership of certain individuals in a gang, and the ongoing criminality of the Southside F Troop would assist the trier of fact. (*People v. Gamez, supra,* 235 Cal.App.3d at p. 965.) " '[T]he decisive consideration in determining the admissibility of expert opinion evidence is whether the subject of inquiry is one of such common knowledge that men of ordinary education could reach a conclusion as intelligently as the witness or whether, on the other hand, the matter is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact. [Citations.]' [Citation.]" (*Ibid.*)

The appellate court also held that the opinions were supported by proper foundation. The officers relied not only on statements of unidentified gang members, but also personal observations and experience, the observations of other officers in the department, police reports, a photo of the defendant making ("throwing") a gang sign with his hand, and writings that displayed his gang affiliation. (*People v. Gamez, supra,* 235 Cal.App.3d at p. 967.)

In *People v. McDaniels* (1980) 107 Cal.App.3d 898 [166 Cal.Rptr. 12] a deputy sheriff testified "at some length regarding the general social customs, mores, and practices of south central Los Angeles street gangs." (*Id.* at p. 902.) Specifically, the deputy testified that a person who lived in a gang's territory was automatically associated with that gang by rival gangs, fistfights between gangs normally occur at neutral sites, if a gang traveled to another gang's territory, normally more than a fistfight would occur, and it was unusual for various Crip factions to band together when taking retaliatory action.

The appellate court rejected foundational challenges to this testimony. First, the appellate court found that the deputy was qualified to render expert opinions. (*People v. McDaniels, supra,* 107 Cal.App.3d at p. 904.) Second, the appellate court held that the deputy could properly rely on hearsay statements since there was no showing that such statements were not the type reasonably relied on by expert witnesses. (*Id.* at p. 905.)

The cases which cite *Gardeley* repeatedly refer to expert testimony about the "culture and habits" of criminal street gangs (*People v. Ochoa* (2001) 26

Cal.4th 398, 438 [110 Cal.Rptr.2d 324, 28 P.3d 78]), including testimony about the size, composition or existence of a gang (*People v. Zermeno* (1999) 21 Cal.4th 927, 929 [89 Cal.Rptr.2d 863, 986 P.2d 196]; *People v. Villegas* (2001) 92 Cal.App.4th 1217, 1227 [113 Cal.Rptr.2d 1]; *People v. Galvan* (1998) 68 Cal.App.4th 1135, 1139 [80 Cal.Rptr.2d 853]; *People v. Ruiz* (1998) 62 Cal.App.4th 234, 238 [72 Cal.Rptr.2d 572]), gang turf or territory (*People v. Castenada* (2000) 23 Cal.4th 743, 745 [97 Cal.Rptr.2d 906, 3 P.3d 278]; *People v. Zermeno, supra,* at p. 930; *People v. Loeun* (1997) 17 Cal.4th 1, 7 [69 Cal.Rptr.2d 776, 947 P.2d 1313]; *People v. Williams* (1997) 16 Cal.4th 153, 192-193 [66 Cal.Rptr.2d 123, 940 P.2d 710]), an individual defendant's membership in, or association with, a gang (*People v. Castenada, supra,* at p. 753; *People v. Zermeno, supra,* at p. 929; *People v. Duran* (2002) 97 Cal.App.4th 1448, 1464 [119 Cal.Rptr.2d 272]; *People v. Villegas, supra,* at p. 1228; *People v. Galvan, supra,* at p. 1139; *People v. Ruiz, supra,* at p. 238; *In re Ramon T.* (1997) 57 Cal.App.4th 201, 204 [66 Cal.Rptr.2d 816]; *People v. Akins* (1997) 56 Cal.App.4th 331, 336 [65 Cal.Rptr.2d 338]; *In re Elodio O.* (1997) 56 Cal.App.4th 1175, 1178 [66 Cal.Rptr.2d 95][10]), the primary activities of a specific gang (*People v. Loeun, supra,* at p. 6; *People v. Galvan, supra,* at p. 1139; *In re Ramon T., supra,* at p. 207), motivation for a particular crime, generally retaliation or intimidation (*People v. Zermeno, supra,* at p. 930; *People v. Loeun, supra,* at p. 7; *People v. Williams, supra,* at pp. 192-193; *People v. Villegas, supra,* at p. 1227; *People v. Zepeda* (2001) 87 Cal.App.4th 1183, 1208 [105 Cal.Rptr.2d 187]), whether and how a crime was committed to benefit or promote a gang (*People v. Villegas, supra,* at p. 1224; *In re Ramon T., supra,* at p. 204; *People v. Akins, supra,* at p. 336; *In re Elodio O., supra,* at p. 1178), rivalries between gangs (*People v. Williams, supra,* at pp. 192-194), gang-related tattoos, gang graffiti and hand signs (*People v. Ochoa, supra,* at p. 438; *People v. Loeun, supra,* at p. 6; *People v. Champion* (1995) 9 Cal.4th 879, 919-924 [39 Cal.Rptr.2d 547, 891 P.2d 93][11]), and gang colors or attire (*People v. Loeun, supra,* at pp. 6-7; *People v. Williams, supra,* at p. 192).[12]

While not an exhaustive list of all cases that consider expert testimony on gangs, nor an exclusive list of all gang topics for which expert testimony may be admissible, these cases provide guidance to resolve the

---

[10]Disapproved in *People v. Sengpadychith* (2001) 26 Cal.4th 316, 322-324 [109 Cal.Rptr.2d 851, 27 P.3d 739], to the extent *Elodio O.* holds that only past activities, and not the current offenses, can be used as evidence of an alleged street gang's primary activities. (§ 186.22, subd. (b).)

[11]Disapproved in *People v. Ray* (1996) 13 Cal.4th 313, 363, 369, footnote 2 [52 Cal.Rptr.2d 296, 914 P.2d 846], to the extent that *Champion* permits introduction of a juvenile adjudication itself to establish criminal activity under section 190.3.

[12]Not all cases address the admissibility of gang testimony. Many simply refer to the testimony to support the holding in the case.

issue presented by this case. None of these cases permitted testimony that a specific individual had specific knowledge or possessed a specific intent. *Olguin* came close to addressing this issue when the appellate court held the officer's testimony was admissible since it was framed in terms of gangs in general, not a specific defendant's subjective expectation.[13] (*People v. Olguin, supra,* 31 Cal.App.4th at p. 1371.)

Darbee's testimony went much further than the officer's testimony in *Olguin* did. Through the use of hypothetical questions, Darbee testified that each of the individuals in the three cars (1) knew there was a gun in the Chevrolet and a gun in the Mazda, and (2) jointly possessed the gun with every other person in all three cars for their mutual protection. In other words, Darbee testified to the subjective *knowledge and intent* of each occupant in each vehicle. Such testimony is much different from the *expectations* of gang members in general when confronted with a specific action.

Darbee's testimony was the only evidence offered by the People to establish the elements of the crime. As such, it is the type of opinion that did nothing more than inform the jury how Darbee believed the case should be decided. It was an improper opinion on the ultimate issue and should have been excluded. (*Summers v. A.L. Gilbert Co., supra,* 69 Cal.App.4th at pp. 1182-1183.)

Moreover, this topic is not one for which expert testimony is necessary. Testimony that a gang would expect retaliation as a result of a shooting such as occurred at Casa Loma Park, that gangs would travel in large groups if expecting trouble, that in a confrontation more than one gang member may share a gun in some identified circumstances, and that oftentimes gang members traveling together may know if one of their group is armed, would have been admissible. Beyond that, Darbee simply informed the jury of his belief of the suspects' knowledge and intent on the night in question, issues properly reserved to the trier of fact. Darbee's beliefs were irrelevant.

The holding in *People v. Muniz* (1993) 16 Cal.App.4th 1083 [20 Cal.Rptr.2d 460] does not influence our decision. In *Muniz,* an officer testified that in his opinion the defendant, a known gang member, was preparing to commit a drive-by shooting when he was observed holding a loaded semiautomatic rifle in an illegally parked car with three other known gang members. (*Id.* at p. 1088.) The officer based his opinion on facts he

---

[13]The testimony to which the defendant objected was: " 'Q. Now, do you have an opinion as to a gang member's expectation of what will result from, let's say, a mutual yelling out of gang names or affiliations? [¶] A. Yes. [¶] Q. And what is that opinion? [¶] A. The gang member would expect a violent confrontation.' " (*People v. Olguin, supra,* 31 Cal.App.4th at p. 1371.)

observed, not on inferences based on an incident to which the defendant was not connected. Moreover, the defendant's conviction was based on not only these observations, but also the defendant's admission. (*Id.* at p. 1087.)

Since the erroneously admitted testimony provided the only evidence to support the conspiracy theory, reversal of the judgment is required.

### C. *The Basis for Darbee's Opinions*

We address one other aspect of Darbee's testimony that we find troubling. Darbee was asked his opinion about whether each of the 12 men arrested that night was a member of the East Side Crips. Darbee opined that each was, and stated that he based his opinion on review of criminal records, Bakersfield Police Department records, photographs of the men, the color of the clothing they wore that night, the people with whom they associated, his training and experience, and conversations with gang and nongang members of the community. Darbee then spent over 100 pages of transcript explaining in detail why he believed each man was a gang member. This testimony varied from convictions, to arrests without convictions, to pure speculation.

Darbee's testimony regarding T.D., a juvenile occupant in the Chevrolet, was particularly egregious. In addition to several convictions, Darbee testified (1) T.D. was with other gang members near where a man was killed, (2) T.D. was accused of shooting at two people, (3) T.D. was suspected of involvement in a gun battle with two rival gang members shortly before he was arrested for possession of a handgun and possession of marijuana, and (4) T.D. was accused of robbing a store with three other gang members. There was no evidence that T.D. was arrested, tried or convicted (or the allegations of juvenile petitions found true) for any of these accusations.

It is disturbing that the trial court allowed Darbee to offer this testimony on direct examination despite repeated objections. The law in California is well settled: An expert may not testify to incompetent hearsay under the guise of stating reasons for an opinion. (*People v. Price* (1991) 1 Cal.4th 324, 416 [3 Cal.Rptr.2d 106, 821 P.2d 610]; *People v. Coleman* (1985) 38 Cal.3d 69, 92 [211 Cal.Rptr. 102, 695 P.2d 189].) Darbee's testimony was clearly incompetent hearsay that should neither have been elicited nor admitted. Moreover, the trial court is obligated by Evidence Code section 352 " 'to weigh the probative value of inadmissible evidence relied upon by an expert witness . . . against the risk that the jury might improperly consider it as independent proof of the facts recited therein.' " (*People v. Gardeley, supra*, 14 Cal.4th at p. 619.) The trial court abused its discretion by allowing Darbee to testify at such great length about material that inflamed the jury's passions and had little or no probative value.

## 2. *Substantial Evidence*

Our determination that the trial court erred in admitting Darbee's opinions requires reversal of the judgment, but would also subject Killebrew to a new trial. Therefore, we consider Killebrew's contention that the judgment was not supported by substantial evidence because there was no evidence that he was a member of a conspiracy.

■ Our review of the sufficiency of the evidence is deferential. We review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Hillhouse* (2002) 27 Cal.4th 469, 496 [117 Cal.Rptr.2d 45, 40 P.3d 754]; *People v. Superior Court (Jones)* (1998) 18 Cal.4th 667, 681 [76 Cal.Rptr.2d 641, 958 P.2d 393].) We focus on the whole record, not isolated bits of evidence. (*People v. Slaughter* (2002) 27 Cal.4th 1187, 1203 [120 Cal.Rptr.2d 477, 47 P.3d 262].) We presume the existence of every fact the trier of fact could reasonably deduce from the evidence that supports the verdict. (*People v. Kraft* (2000) 23 Cal.4th 978, 1053 [99 Cal.Rptr.2d 1, 5 P.3d 68].) If the verdict is supported by substantial evidence, we accord due deference to the verdict and will not substitute our evaluations of the witnesses' credibility for that of the trier of fact. (*People v. Koontz* (2002) 27 Cal.4th 1041, 1078 [119 Cal.Rptr.2d 859, 46 P.3d 335].)

■ As stated above, the prosecution's theory was that because of the expectation of retaliation, the people in the three cars were traveling together and were armed in the event they encountered retaliation for the Casa Loma Park shooting. The prosecution relied on the testimony of Darbee to support its theory that the gang members would all know there were guns in the vehicles and would "jointly possess" the guns.

To tie Killebrew to the conspiracy, the prosecution was required to establish that he was in one of the cars. Without placing Killebrew in one of the vehicles, the prosecution's only argument was that Killebrew directed the occupants in the vehicles to arm themselves and patrol East Side Crip territory that night, a proposition for which there was no evidence.

None of the witnesses placed Killebrew in any of the vehicles. Killebrew was not in either the Chevrolet or Mazda because all four occupants of each of those vehicles were positively identified. Therefore, Killebrew could be riding only in the Chrysler. Three of the passengers in the Chrysler were identified and arrested at the taco stand. Each testified and denied Killebrew

was in the Chrysler. The jailhouse informant also testified he was told that Killebrew was not in the Chrysler.

The only witness who provided any support for the prosecution's theory was Carruesco, who testified there were four people in the Chrysler. Carruesco's partner, Heredia, testified he could not tell how many people were in the backseat of the vehicle.

The prosecution also relied on the fact that Killebrew was in the area of the stop of the Chevrolet. The evidence, however, established that there were many residences in the area that Killebrew could have been going to or coming from.

Finally, the People relied on Killebrew's alibi. Killebrew told investigators he recently left his cousin's house. Killebrew's cousin testified that Killebrew was at his house that evening, but left approximately two hours before Killebrew was arrested. Killebrew did not otherwise account for his whereabouts that evening.

These facts do not lead to an inference, reasonable or otherwise, that Killebrew was the fourth passenger in the Chrysler. There was no evidence to connect Killebrew to the Chrysler. The direct testimony contradicted the prosecution's assertion, and so did the informant, on whom the prosecution relied to establish that the handgun found at the taco stand was possessed by these gang members. Killebrew's presence in the area, his status as a gang member, and his providing an incomplete accounting of his whereabouts that evening are not substantial evidence.

The People's case was based on speculation: Was there a fourth passenger in the Chrysler and, if so, who was that person? Speculation is not substantial evidence. (*People v. Waidla* (2000) 22 Cal.4th 690, 735 [94 Cal.Rptr.2d 396, 996 P.2d 46].) The judgment must be reversed for lack of evidence.

Our disposition of the case renders Killebrew's remaining contentions moot. Similarly, the requests by Killebrew and the People that we take judicial notice of various court records are denied as moot.

### DISPOSITION

The judgment is reversed and retrial is barred. (*People v. Trevino* (1985) 39 Cal.3d 667, 699 [217 Cal.Rptr. 652, 704 P.2d 719], overruled on other

grounds in *People v. Johnson* (1989) 47 Cal.3d 1194, 1221 [255 Cal.Rptr. 569, 767 P.2d 1047].) The requests to take judicial notice are denied.

Buckley, Acting P. J., and Gomes, J., concurred.

Respondent's petition for review by the Supreme Court was denied January 15, 2003.