Filed 6/15/16  P. v. Thao CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>XOU THAO,<br><br>     Defendant and Appellant. | C079314<br><br>(Super. Ct. No. 12F00705) |

A jury found defendant Xou Thao guilty of one count of willful and malicious discharge of a firearm at an occupied vehicle (Pen. Code, § 246—count one) [1] and two counts of assault with a firearm (§ 245, subd. (a)(2)—counts two and three).  The jury also found true the gang enhancement allegations (§ 186.22, subd. (b)).  The trial court sentenced defendant to an indeterminate term of 15 years to life in prison on count one,

---

[1]  Undesignated statutory references are to the Penal Code.

1

plus a determinate term of 6 years on count two and two years on count three, stayed pursuant to section 654. On appeal, defendant contends there was insufficient evidence to support the gang enhancements. We disagree and shall affirm the judgment.

## I.  BACKGROUND

In January 2012, Jakob Stinson and Dennis Faria were delivering newspapers in the Meadowview area of Sacramento around 4:00 a.m. Stinson was driving and Faria was riding in the passenger seat. To speed up the delivery of papers, Faria would roll his window down, sit on the passenger side door, and hold onto the car by putting his hands through the open sunroof.

While near the area of Detroit Boulevard and Meadowview Road, Faria saw a black Lexus IS 300 with blue headlights and yellow fog lights "cruising" around the neighborhood. When Faria first saw the Lexus, it was driving at a normal speed. However, the next time he saw the vehicle, it was driving very slowly towards him. The Lexus pulled up next to Faria and Stinson's vehicle and stopped. The passenger in the Lexus then rolled down his window, climbed onto the door, and fired about six shots at Faria. Faria, who was sitting on the passenger side door, ducked while Stinson sped away. The Lexus chased after Faria and Stinson but did not catch them.

Stinson called 911 and reported the shooting. Sacramento Police Officer John Sallee met with Faria and Stinson and took them to the place where the shooting occurred on the 7600 block of Detroit Boulevard, which is known as the "turf" of the Junior Criminal Crips (JCC) gang. Faria provided a description of the Lexus, the driver, and the passenger. Faria described the driver as "a male Asian adult in his twenties wearing a black shirt with a . . . medium build." Faria described the passenger as "a male Asian adult in his twenties" wearing "a black puffy jacket" with a slightly bigger build than the driver. Faria also told Officer Sallee that he believed the gun used by the shooter was "a small revolver."

2

Faria identified both the shooter and the driver in photographic lineups, and told police that defendant was the driver of the Lexus. After conducting surveillance, the police learned that the Lexus was located at defendant's house on Detroit Boulevard. During the execution of a search warrant, the police observed defendant hide a loaded .22-caliber revolver under a tarp in his back yard. A search of defendant's bedroom revealed a newspaper article about the shooting that had certain portions underlined, including text indicating that the victims were newspaper carriers. In addition, the time, place, and car believed to be involved in the shooting were circled. The police also found gang graffiti, a CD cover with "JCC" written repeatedly in blue, and a black puffy jacket in defendant's room. The Lexus, which was registered to defendant, was in the garage.

The Lexus was swabbed for gunshot residue. An expert analyzed the results and found 19 gunshot residue particles on the passenger headliner as well as three particles on the interior passenger door. The expert concluded that the gunshot residue could have been the result of a firearm discharged near the vehicle.

To establish that the crimes were gang related, the prosecutor offered the testimony of an expert in Asian gangs, Detective Chris Starr of the Sacramento Police Department. Detective Starr testified as follows: The Junior Criminal Crips is a criminal street gang associated with the Crips. They wear the color blue and predominantly come from the Hmong population. The Junior Criminal Crips gang members sometimes call themselves "criminalz" or "JCC," and they commonly get tattoos in a bamboo font to associate themselves with the gang. JCC gang members also use graffiti and gang signs to identify themselves and to taunt or disrespect their rivals. To join the JCC, a potential member could be part of a certain family, "jumped in" (i.e., beaten by other gang members), or perform a "worthy" criminal act. The primary criminal offenses for JCC gang members are burglaries, car thefts, selling narcotics, shootings, and homicides.

The JCC claim Detroit Boulevard in the Meadowview area as their "turf." JCC gang members sell drugs and keep rivals and strangers away from their turf "to establish

3

a sense of power, a sense of ownership," and to prevent interference with their activities. JCC gang members are known to patrol Detroit Boulevard to intimidate people and assert their power. The 7600 block of Detroit Boulevard is considered the "heart" of the gang's area. Approximately five to 10 gang members or associates live in that area, which is a busy area for gang crimes, including homicides, shootings, and assaults.

According to Detective Starr, JCC gang members wish to be feared because "they equate fear to respect," and they get respect by defending their turf. Detective Starr explained that older gang members influence younger gang members by planning crimes for them. He further explained that gang members usually discuss crimes beforehand to avoid getting caught and/or hurt, and that it is common for younger gang members to seek approval from older members before they commit a crime.

At the time of the shooting, defendant was 21 and the shooter, X.M., was 16. According to Detective Starr, this age difference is significant because it meant that defendant had influence over X.M., a validated member of the JCC. Detective Starr noted that X.M. had known defendant for several years prior to the shooting, and had associated with defendant while with other JCC gang members.

While defendant was not a validated JCC gang member at the time of the shooting, he had a JCC gang tattoo and a picture had been taken of him with other JCC gang members displaying gang signs. Defendant had also been involved in a gang-related fight in November 2010 while he was with other JCC gang members. In addition, in April 2011, defendant was stopped in a vehicle that matched the description of the vehicle involved in a gang-related shooting. At that time, defendant and the driver of the vehicle, a validated JCC gang member, both had a JCC gang tattoo. Further, in July 2011, defendant was observed with JCC gang members on two separate occasions. On one of those occasions, he was with X.M.

According to Detective Starr, gang members will band together to shoot at an unknown car in their neighborhood to protect their turf. He stated that such actions

4

benefit the gang by getting the word out to other gangs that it is "not a good idea to come in that neighborhood."

Based on his conversations with defendant, defendant's tattoos, the people defendant associates with, and defendant's past behavior, Detective Starr concluded that defendant was a member of the JCC. He also concluded that the crimes committed in this case were done for the benefit of the JCC to protect its turf. The prosecution then asked Detective Starr hypothetical questions that closely tracked the facts in this case. Detective Starr noted that he would not be "surprised" if two gang members agreed to intimidate an unknown car driving in their turf by shooting at them. He also said he would expect the two gang members would have communicated about the shooting before it occurred.

Following a jury trial, defendant was found guilty of one count of willful and malicious discharge of a firearm at an occupied vehicle (count one) and two counts of assault with a firearm (counts two and three). The jury also found true the gang enhancement allegations. (§ 186.22, subd. (b).) The trial court sentenced defendant to an indeterminate term of 15 years to life on count one, plus a determinate term of six years on count two (the middle term of three years, plus three years for the gang enhancement) and two years on count three (one-third the middle term of one year, plus one year for the gang enhancement). The determinate terms on counts two and three were stayed pursuant to section 654.

Defendant filed a timely notice of appeal.

## II. DISCUSSION

Defendant contends there is insufficient evidence to support the jury's gang enhancement finding. Defendant does not dispute that he committed the underlying offenses in association with another gang member. Rather, he argues that the evidence fails to demonstrate that he acted with the mental state required to sustain a gang enhancement. According to defendant, there is no evidence from which a reasonable jury

5

could infer that the shooting was committed with the intent to promote, further, or assist in any criminal conduct by a gang member. We disagree.

In reviewing a challenge to the sufficiency of evidence, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value— from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Wilson* (2008) 44 Cal.4th 758, 806.) We presume every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence. (*Ibid.*) If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding. (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.) "A reviewing court neither reweighs evidence nor reevaluates a witness's credibility." (*Ibid.*) Reversal for insufficient evidence is warranted only where it clearly appears that upon no hypothesis whatsoever is there sufficient evidence to support a conviction. (*People v. Bolin* (1998) 18 Cal.4th 297, 331; *People v. Massie* (2006) 142 Cal.App.4th 365, 371.)

A person is subject to increased punishment for a felony related to a criminal street gang. (*People v. Hernandez* (2004) 33 Cal.4th 1040, 1047.) To establish a gang enhancement, the prosecution must prove two elements: (1) the crime was "committed for the benefit of, at the direction of, or in association with any criminal street gang"; and (2) the defendant had "the specific intent to promote, further, or assist in any criminal conduct by gang members." (§ 186.22, subd. (b)(1); see *People v. Albillar* (2010) 51 Cal.4th 47, 60; *People v. Miranda* (2011) 192 Cal.App.4th 398, 411 (*Miranda*).) The crime must be " 'gang related.' " (*People v. Gardeley* (1996) 14 Cal.4th 605, 622, 625, fn. 12; *People v. Mendez* (2010) 188 Cal.App.4th 47, 56 [gang enhancement statute "applies when a crime is gang related"].) A defendant's mere membership in the gang does not suffice to establish the gang enhancement. (*Gardeley, supra,* at pp. 623-624.)

6

Rather, " '[t]he crime itself must have some connection with the activities of a gang.' " (*In re Frank S.* (2006) 141 Cal.App.4th 1192, 1199.)

"There is rarely direct evidence that a crime was committed for the benefit of a gang. For this reason, 'we routinely draw inferences about intent from the predictable results of action. We cannot look into people's minds directly to see their purposes. We can discover mental state only from how people act and what they say.' [Citation.] 'Commission of a crime in concert with known gang members is substantial evidence which supports the inference that the defendant acted with the specific intent to promote, further or assist gang members in the commission of the crime.' [Citations]." (*Miranda, supra,* 192 Cal.App.4th at pp. 411-412; see *People v. Albillar*, *supra*, 51 Cal.4th at p. 68 ["if substantial evidence establishes that the defendant intended to and did commit the charged felony with known members of a gang, the jury may fairly infer that the defendant had the specific intent to promote, further, or assist criminal conduct by those gang members"]; *People v. Morales* (2003) 112 Cal.App.4th 1176, 1198 [gang member's commission of crime in association with another person he knows to be a fellow gang member supports the inference that he acted with the requisite specific intent].)

The prosecution may meet its burden of establishing a gang enhancement by presenting expert testimony on criminal street gangs. (*People v. Hernandez*, *supra*, 33 Cal.4th at pp. 1047-1048.) "Expert testimony is admissible to establish the existence, composition, culture, habits, and activities of street gangs; a defendant's membership in a gang; gang rivalries; the 'motivation for a particular crime, generally retaliation or intimidation'; and 'whether and how a crime was committed to benefit or promote a gang.' " (*People v. Hill* (2011) 191 Cal.App.4th 1104, 1120; see also *People v. Killebrew* (2002) 103 Cal.App.4th 644, 656-657, disapproved on another ground in *People v. Vang* (2011) 52 Cal.4th 1038, 1047, fn. 3.)

We conclude that sufficient evidence supports the jury's finding on the specific intent element of the gang enhancement.[2] Viewed in the light most favorable to the judgment, the jury could have reasonably concluded that defendant acted with the specific intent to promote, further or assist criminal conduct by a gang member. There was evidence that the shooting occurred in the JCC's territory, defendant and X.M. were members of the JCC, defendant knew X.M. was a member of the JCC prior to the shooting,[3] defendant and X.M. likely discussed the shooting prior to its commission, and defendant assisted X.M. in the shooting to benefit the JCC by protecting its turf. Accordingly, because substantial evidence establishes that defendant committed the charged offenses in concert with a known member of the JCC, defendant's sufficiency of the evidence challenge fails. (*Miranda*, *supra*, 192 Cal.App.4th at p. 412; *People v. Morales, supra*, 112 Cal.App.4th at p. 1198.)

---

[2] Defendant does not challenge the sufficiency of evidence regarding the first element of the enhancement. But even if defendant did, we would reject such an argument. On this record, a reasonable jury could have concluded that the charged crimes were committed for the benefit of and in association with the JCC.

[3] Defendant admitted that he knew X.M. was a gang member at the time of the shooting.

8

## III.  DISPOSITION

The judgment is affirmed.

/S/

RENNER, J.

We concur:

/S/

NICHOLSON, Acting P. J.

/S/

MURRAY, J.

9